STATE EX REL. PEDERSEN, Appellant, V. BLESSINGER,
Sheriff of Racine County, Respondent.

*No. State 97. Argued October 5, 1972.—Decided November 9, 1972.*
(Also reported in 201 N. W. 2d 778.)

For the appellant there was a brief and oral argument by *Arthur B. Nathan* of Racine.

For the respondent the cause was argued by *Robert D. Martinson,* assistant attorney general, with whom on the brief was *Robert W. Warren,* attorney general.

HALLOWS, C. J. On July 20, 1971, Michael Pedersen pleaded no contest to a state charge of disorderly conduct (sec. 947.01 (1), Stats.) and was fined $50 and costs. He also pleaded no contest to a state charge

of operating a vehicle without a license (sec. 343.05) and was fined $35 and costs and was given sixty days in which to pay the fines and costs. When he failed to do so a commitment was issued in which he was ordered to serve not more than twenty and fifteen days in the county jail or until he paid the fines and costs. The record is not clear whether these time limits were originally set at the time of conviction or at the time of the commitment was issued.[1] The original sentence is not in the record. Pedersen was arrested and jailed and at a hearing for a writ of habeas corpus Pedersen claimed he was indigent and that the imprisonment for his inability to pay was unconstitutional as a denial of the equal protection of the laws. The trial court found the statutes constitutional and from the order quashing the writ, Pedersen appealed, and he was granted a stay during his appeal.

Pedersen claims it is unconstitutional to imprison him because of his inability to pay the fines and rests his argument upon *Tate v. Short* (1971), 401 U. S. 395, 91 Sup. Ct. 668, 28 L. Ed. 2d 130, *Morris v. Schoonfield* (1970), 399 U. S. 508, 90 Sup. Ct. 2232, 26 L. Ed. 2d 773; and *Williams v. Illinois* (1970), 399 U. S. 235, 90 Sup. Ct. 2018, 26 L. Ed 2d 586. The holding of these cases as distinguished from their language does not control this case, as the question here involved was expressly not decided in Pedersen's favor when in the *Tate Case* the court said, pages 400, 401:

"Nor is our decision to be understood as precluding imprisonment as an enforcement method when alternative means are unsuccessful despite the defendant's reasonable efforts to satisfy the fines by those means; the determination of the constitutionality of imprisonment in that circumstance must await the presentation of a concrete case."

[1] No question of counsel representation is raised on this appeal under the rule of *Argersinger v. Hamlin* (1972), 407 U. S. 25, 92 Sup. Ct. 2006, 32 L. Ed. 2d 530.

What these cases teach is that one who has been convicted of a crime and fined is not to be imprisoned in satisfaction of the fine or in lieu thereof if he is unable to pay the fine. The holdings go no farther. In *Williams*, the Illinois statute authorized both a fine and an imprisonment. Williams was sentenced to the maximum of one year for petty theft and fined $500 plus costs. The judgment provided that if Williams did not pay the fine and costs by the expiration of the imprisonment he was to remain in jail until the amount was satisfied at the rate of $5 per day. The supreme court held the statute as applied to Williams, an indigent, worked an invidious discrimination solely because he was too poor to pay the fine and therefore violated the equal protection clause. Actually, the holding was much narrower because Williams had served the maximum term and the court said imprisonment for failure to pay the fine could not exceed the maximum imprisonment term. And, it is to be noted that the imprisonment was in satisfaction of the fine and the maximum term had already been served. In the instant case, imprisonment is not in lieu of the fines but is a means to enforce their collection and is in no sense a punishment for the crime or in payment of the fines.

Although sec. 947.01, Stats., provides for a fine of not more than $200 or imprisonment for not more than ninety days or both and also sec. 343.05 (3), Stats., provides for a fine of not more than $100 or imprisonment of not more than six months, or both, for the first offense, Pedersen's sentence was a fine only.

In *Morris v. Schoonfield*, remanded in light of *Williams*, Mr. Justice WHITE wrote a concurring opinion in which he stated the principle of *Williams* applied to jailing of an indigent for failure to pay a fine although no accompanying prison sentence was involved. In *Tate v. Short*, *supra*, the Texas statute provided for a fine only for traffic offenses and also for imprisonment for

the nonpayment of the fine at the rate of $5 per day. Thus imprisonment on a predetermined formula was in satisfaction and in payment of the fine. The court in *Tate* adopted Justice WHITE'S view and stated as follows, page 398:

" 'the same constitutional defect condemned in Williams also inheres in jailing an indigent for failing to make immediate payment of any fine, whether or not the fine is accompanied by a jail term and whether or not the jail term of the indigent extends beyond the maximum term that may be imposed on a person willing and able to pay a fine. In each case, the Constitution prohibits the State from imposing a fine as a sentence and then automatically converting it into a jail term solely because the defendant is indigent and cannot forthwith pay the fine in full.' "

Thus a jail sentence cannot be automatically substituted for a fine in the event the defendant is unable to immediately pay the fine. This is the typical $30 or thirty days sentence. We do not have this alternative; nor a predetermined equivalency formula; nor do we have imprisonment in terms of payment of a fine, much less at a certain dollar rate per day. We do have in sec. 973.07, Stats., a six months' limitation on the enforcement method of collection of a fine by imprisonment, supposedly on the ground of public policy that if six months' incarceration will not induce payment, a longer period will be fruitless. In village, city and county ordinance violations, the sanction can be only a fine or a forfeiture as those units of government lack sovereignty which is necessary to make such violation a crime involving the punishment of imprisonment. *State ex rel. Keefe v. Schmiege* (1947), 251 Wis. 79, 28 N. W. 2d 345.

The problem of imposing fines and their collection from indigents has been the subject of much consideration by scholars. The *Standards on Sentencing Alterna-*

*tives and Procedures* of the American Bar Association [2]
reflects the philosophy of rethinking the function of the

[2] "2.7 Fines.

"(a) The legislature should determine the offenses or categories of offenses for which a fine would be an appropriate sentence, and should state the maximum fine which can be imposed. Except in the case of offenses committed by a corporation, the legislature should not authorize the imposition of a fine for a felony unless the defendant has gained money or property through the commission of the offense.

"(b) Whether to impose a fine in a particular case, its amount up to the authorized maximum, and the method of payment should remain within the discretion of the sentencing court. The court should be explicitly authorized to permit installment payments of any imposed fine, on conditions tailored to the means of the particular offender.

"(c) In determining whether to impose a fine and its amount, the court should consider:

"(i) the financial resources of the defendant and the burden that payment of a fine will impose, with due regard to his other obligations;

"(ii) the ability of the defendant to pay a fine on an installment basis or on other conditions to be fixed by the court;

"(iii) the extent to which payment of a fine will interfere with the ability of the defendant to make any ordered restitution or reparation to the victim of the crime; and

"(iv) whether there are particular reasons which make a fine appropriate as a deterrent to the offense involved or appropriate as a corrective measure for the defendant.

Revenue production is not a legitimate basis for imposing a fine.

"(d) It would be appropriate for the legislature to endorse in the penal code standards such as those specified in subsection (c). They are in any event commended to sentencing courts as guides to the exercise of discretion.

"(e) The court should not be authorized to impose alternative sentences, e.g., 'thirty dollars or thirty days.' The effect of non-payment of a fine should be determined after the fine has not been paid and after examination of the reasons for nonpayment. The court's response to nonpayment should be governed by the standards set forth in section 6.5.

"(f) In fixing the maximum fine for some offenses, the legislature should consider the feasibility of employing an index other than a dollar amount in cases where it might be appropriate.

fine as a criminal sanction and when a fine is conceived as an alternative to a jail sentence, imprisonment following default in the payment of the fine is illogical and results in unfairness to those unable to pay because of their poverty. Two approaches have been suggested to alleviate imprisonment for nonpayment. This is in keeping with the credit way of doing business—even before the advent of our credit-card society. The Model Penal Code in sec. 302.1(1) [3] provides for instalment payments or the payment within a specified period of time. *See also:* Note, *Fines and Fining—An Evaluation,* 101 U. of Pa. L. Rev. (1953), 1013, 1022–1024; Note, *Imprisonment of Indigents for Non-Payment of Fines or Court Costs: The Need for Legislation That Will Provide Protection for the Poor,* 48 N. Dak. L. Rev. (1971), 109; *Discriminations Against the Poor,* 81 Harv. L. Rev. (1967), 435, 448; California Penal Code 1205, 1966 supplement; New York Criminal Procedure, sec. 470–d 1 (b) ; as amended, 1967 Session Laws, ch. 681, sec. 61. Another approach is that fines be imposed only on those who are likely to be able to pay them and this determination should be made at the time of sentencing. *See* Model Penal Code, sec. 7.02 (3) (a). However, a variation

For example, a fine relative to the amount of the gain might be appropriate in cases where the defendant has profited by his crime, or a fine relative to sales, profits, or net annual income might be appropriate in some cases, such as business or antitrust offenses, in order to assure a reasonably even impact of the fine on defendants of variant means.

"(g) Legislative attention should also be devoted to the desirability of a special schedule of fines for offenses committed by corporations."

[3] "Section 302.1. **Time and Method of Payment; Disposition of Funds.**

"(1) When a defendant is sentenced to pay a fine, the Court may grant permission for the payment to be made within a specified period of time or in specified installments. If no such permission is embodied in the sentence, the fine shall be payable forthwith."

exists to cover cases where the defendant is unable to pay a fine imposed when his ability to pay has not been predetermined. In such a case he may at any time apply to the court for a resentence. *See* New York Code, Criminal Procedure, sec. 470–d 1 (b), as amended, 1967, Session Laws, ch. 681, sec. 61. This alternative we have in Wisconsin under the doctrine of *Hayes v. State* (1970), 46 Wis. 2d 93, 175 N. W. 2d 625, if the application is made or the court moves sua sponte within ninety days of the sentencing.

Of course, if a court is to determine at the time of sentencing whether a defendant is able to pay a fine, the result may be, at least in state cases, although it would be impossible in ordinance cases, that all defendants would spend a short term confinement in jail as a punishment in order to avoid an inverse discrimination. In fact, Mr. Justice BLACKMUN in his concurring opinion in *Tate* has well put it in these words, page 401:

"Eliminating the fine whenever it is prescribed as alternative punishment avoids the equal protection issue that indigency occasions and leaves only possible Eighth Amendment considerations. If, as a nation, we ever reach that happy point where we are willing to set our personal convenience to one side and we are really serious about resolving the problems of traffic irresponsibility and the frightful carnage it spews upon our highways, a development of that kind may not be at all undesirable."

We consider sec. 973.05 (1), Stats.,[4] to be constitutional. There may be isolated cases where the application of the section might work a discrimination but such an application is not required by the force of commands of these statutes. A period of sixty days is set in sec.

---

[4] "973.05 **Fines.** (1) When a defendant is sentenced to pay a fine, the court may grant permission for the payment to be made within a period not to exceed 60 days. If no such permission is embodied in the sentence, the fine shall be payable forthwith."

973.05 (1). This is the equivalent timewise in most cases of instalment payment. We do not read *Tate* as requiring instalment payment, although courts seemed to be divided on this point. In *State v. De Bonis* (1971), 58 N. J. 182, 276 Atl. 2d 137, the court took the view that a provision for instalment payment was required; but the court in *Rutledge v. Turner* (1972 Okla. Crim. App.), 495 Pac. 2d 119, held that a future date for total payment in lieu of payment in instalments was acceptable. Certainly, under our statute a trial judge can order instalment payments within the sixty-day period. The question then remains whether sixty days is a reasonable time for the payment of fines in all cases. We think that in most cases, especially those involving traffic offenses the time is reasonable and we hold this section to be constitutional on its face. This section does not provide for any automatic conversion to imprisonment; nor does it forthwith require the payment of a fine. Besides, this section does not prevent a trial court from exercising its inherent power to stay the sentence providing for payment within sixty days upon such terms as the court may then find to be just. This inherent power to stay a sentence to meet the needs of an individual case must be construed as part and parcel of the statute.

We hold also that sec. 973.07, Stats.,[5] is constitutional, as the trial court found. This section, likewise, does not automatically require imprisonment for the failure to pay a fine. It is not directory on the trial courts but permissive. The language is "may be committed." In what cases a defendant should be committed depends upon the facts to be determined by the trial court. If the defendant has ability to pay the fine and will not, then imprisonment is a proper means of enforcement.

---

[5] "973.07 **Failure to pay fine or costs.** When a fine or the costs are not paid as required by the sentence, the defendant may be committed to the county jail until the fine and costs are paid or discharged for a period fixed by the court not to exceed 6 months."

In such case, the defendant has a key to his imprisonment and it is only his contumacy which keeps him from enjoying his liberty.

But what about the person unable in fact and in truth to pay a fine? In such a case, we hold it would be discriminatory to imprison him to coerce a performance he is unable to give. Under such conditions he is imprisoned because of his poverty. The inability to pay a fine is not different than the inability to pay alimony and support in civil cases. The failure must be contumacious. *O'Connor v. O'Connor* (1970), 48 Wis. 2d 535, 542, 180 N. W. 2d 735, 739. But the inability to pay and the question of indigency are relative terms and in the case of a fine, the trial courts should take a long and hard look upon the argument of inability to pay in our affluent society.

Too many people claim indigency when there is no indigency in fact. Too many claim an inability to pay when they consider the payment of a fine to be in the lowest order of priority. In traffic cases it is difficult to find inability to pay when a defendant owns an automobile and seemingly has money to buy gasoline or has the ability to borrow. Nevertheless, the constitution we believe forbids the imprisonment as a fine-collection method when the court knows it cannot work. Since Wisconsin does not have a sentencing alternative of imprisonment as the equivalent or in payment of a fine,[6] other methods, perhaps civil, must be used to collect the fines as a last resort.

Since we hold that sec. 973.05, Stats., is prima facie constitutional, we think the defendant when given a period of time in which to pay a fine has the burden

---

[6] Certainly, sec. 973.07, Stats., which contemplates imprisonment until the fine and costs are paid, does not provide even by implication that such imprisonment is in satisfaction of the debt, and any argument of double punishment is not meritorious. *See Milwaukee v. Horvath* (1966), 31 Wis. 2d 490, 143 N. W. 2d 446, and *State ex rel. Keefe v. Schmiege, supra.*

to apply to the court for relief, if he is unable to pay within the given time. Lacking such an application by the defendant, the court may under sec. 973.07, commit the defendant to imprisonment as a collection method. The defendant, if he has failed to apply to the court prior to commitment, may seek a hearing and a determination of his ability to pay the fine. But the burden is on the defendant to prove his inability and that the application of this section would be unconstitutional as applied to him. It must be remembered that courts generally, and traffic courts in particular, are not collection agencies and should not be made such. Our courts are overcrowded with cases and only the most streamlined procedure, consistent with constitutional demands, should be mandated. We repeat the defendant has the burden to raise and prove his inability to pay the fine where a commitment is ordered for his failure to do so. Inconvenience, luxury commitments and nonessential priorities do not constitute inability. The payment of a fine is to be given a high priority.

Much time could be saved if trial courts would follow the practice of ascertaining the defendant's ability to pay a fine at the time of sentencing. In cases of crime, probation might be considered as an alternative (sec. 973.09, Stats.). We also point out that under *Hayes v. State, supra,* the trial court could within ninety days of sentencing if the facts warrant, change or modify the sentence. The courts' power under *Hayes* gives some flexibility to avoid unconstitutionally imprisoning a person because he is unable to pay a fine. The ABA *Standards on Sentencing Alternatives and Procedures* recommend trial courts be given the power to modify their sentences;[7] so does the Model Penal Code, sec.

---

[7] "6.5 **Modification of sentence: fines; nonpayment.**

"(a) The sentencing court should have the power at any time to revoke or remit a fine or any unpaid portion, or to modify the

302.3.[8] However, contrary to Wisconsin's theory that imprisonment is a collection device and somewhat illogically, the American Bar Association's Standards consider imprisonment for nonpayment of a fine to be a discharge of the obligation to pay the fine. *See* sec. 6.5 (b) and Commentary, p. 289. We still think imprisonment should be a sanction for the inexcusable failure to pay a fine—in ordinance traffic cases it can have no other function in this state.

terms and conditions of payment. When failure to pay a fine is excusable, such authority should be exercised.

"(b) Incarceration should not automatically follow the nonpayment of a fine. Incarceration should be employed only after the court has examined the reasons for nonpayment. It is unsound for the length of a jail sentence imposed for nonpayment to be inflexibly tied, by practice or by statutory formula, to a specified dollar equation. The court should be authorized to impose a jail term or a sentence to partial confinement (section 2.3) for nonpayment, however, within a range fixed by the legislature for the amount involved, but in no event to exceed one year. Service of such a term should discharge the obligation to pay the fine, and payment at any time during its service should result in the release of the offender.

"(c) The methods available for collection of a civil judgment for money should also be available for the collection of a fine, and should be employed in cases where the court so specifies.

"(d) In the event of nonpayment of a fine by a corporation, the court should be authorized to proceed against specified corporate officers under subsection (b) or against the assets of the corporation under subsection (c)."

[8] "Section 302.3. **Revocation of Fine.**

"A defendant who has been sentenced to pay a fine and who is not in contumacious default in the payment thereof may at any time petition the Court which sentenced him for a revocation of the fine or of any unpaid portion thereof. If it appears to the satisfaction of the Court that the circumstances which warranted the imposition of the fine have changed, or that it would otherwise be unjust to require payment, the Court may revoke the fine or the unpaid portion thereof in whole or in part.".

We do not in this opinion pass upon the constitutionality of sec. 54.15 (1) of the Youth Service Act.[9] We see no problem with sec. 973.05 (2), Stats.,[10] relating to probation. Instalment payment or payment of the whole fine beyond the sixty-day limitation may be made a condition of probation. Sec. 973.09 (1) permits the court to "impose any conditions which appear to be reasonable and appropriate." The sixty-day limitation for those not on probation should not be carried over to those on probation. This construction gives both sections full operation for their intent and purposes without doing violence to either and such a construction strongly follows since both sections are a part of the criminal code and were passed at the same time. *Brunette v. Bierke* (1955), 271 Wis. 190, 72 N. W. 2d 702. *See also Harte v. Eagle River* (1970), 45 Wis. 2d 513, 173 N. W. 2d 683; *State ex rel. Thompson v. Gibson* (1964), 22 Wis. 2d 275, 125 N. W. 2d 636.

The evidence of inability to pay on the part of Pedersen in the court below is unsatisfactory. It does not appear in the record that at the time of sentencing or at the time the commitment was issued there was a hearing at which the defendant's ability to pay the fine was determined. Such a hearing is necessary to avoid an unconstitutional application of the statutes. We think

[9] "54.15 **Duty of court when person fails to pay fine; violation of probation.** (1) If the court sentences a person who is less than 21 years of age at the time of his apprehension to the payment of a fine and the fine is not paid, the court may either remit the fine in whole or in part, or commit him to confinement for a length of time permitted by statutes relating to imprisonment for failure to pay fines. However, such confinement may be only in a place approved by the department for confinement of such persons as come within the purview of sections 54.08 to 54.38."

[10] "973.05 **Fines.** . .

"(2) When a defendant is sentenced to pay a fine and is also placed on probation, the court may make the payment of the fine a condition of probation. . . ."

■■■■■■■■

the case should be returned to determine whether Pedersen is now able to pay the fines. We say "now" because Pedersen has had about one year and four months' time to save or raise funds for the payment of this comparatively small fine.

*By the Court.*—The order dismissing the writ of habeas corpus is set aside, and the court ordered to hold a hearing to determine Pedersen's ability now to pay the fines and costs, and for such further action as is not inconsistent with this opinion.