HUGGETT, Plaintiff in error, v. STATE, Defendant in error.

*No. 76–115–CR.   Argued March 7, 1978.—*
*Decided June 6, 1978.*
(Also reported in 266 N. W. 2d 403.)

For the plaintiff in error there were briefs and oral argument by *Howard B. Eisenberg,* state public defender.

For the defendant in error the cause was argued by *Edward S. Marion,* assistant attorney general, with whom on the brief was *Bronson C. LaFollette,* attorney general.

ABRAHAMSON, J.   On July 22, 1970, Barbara Huggett pleaded guilty to a charge of theft.[1]   The charge

---

[1] The statute proscribing theft provides in pertinent part as follows:

"(1) ACTS.   Whoever does any of the following may be penalized as provided in sub. (3):

"...

"(d) Obtains title to property of another by intentionally deceiving him with a false representation which is known to be false,

arose out of her receipt of $6,473.96 of public assistance funds from the county from August 1, 1967 to October 31, 1969, during which time she received approximately $5,152.64 in earnings which she failed to report as required by sec. 49.12(6), Stats.[2] Huggett lacked funds to hire her own counsel, and counsel was appointed.

On July 22, 1970, Huggett waived the preliminary, entered a plea of guilty, and was sentenced. The trial court imposed an indeterminate five-year sentence, stayed execution of the sentence, and placed Huggett on probation for five years. The only condition of probation specified in the trial court's judgment was that she "make payments in such manner as the Department of Health and Social Services shall direct as follows: Restitution: $6,473.96; costs: $59.00." At the sentencing hearing on July 22, 1970, the trial court directed Huggett's probation officer to determine what restitution Huggett should make during the probationary period depending upon her earnings. Huggett had seven children at the time of her conviction. She agreed that the child support money which her ex-husband paid into court would be applied in partial satisfaction of her restitution obligation. This sum appeared to be $20.00 per month.

made with intent to defraud, and which does defraud the person to whom it is made. . . .

"...

"[(3)] (c) If the value of the property exceeds $2,500, a fine of not more than $10,000 or imprisonment for not more than 15 years or both." Sec. 943.20(1) (d) and (3) (c), Stats.

[2] Sec. 49.12(6), Stats., provides:

"(6) Where a person is originally eligible for assistance and receives any income or assets or both thereafter and fails to notify the officer or agent granting such assistance of the receipt of such assets within 10 days after such receipt and continues to receive aid, such failure to so notify the proper officer or agency of receipt of such assets or income or both shall be considered a fraud and the penalties in sub. (1) shall apply."

On April 20, 1971, approximately nine months after she was placed on probation, Huggett appeared before the trial court to request release of a portion of the $500 restitution she had made so that she could use the funds to meet her home mortgage payments. She testified that she was employed and had a net monthly income of $280 and that her husband had a monthly income of $450. The court granted Huggett's request, and released $250 to her; she agreed that the remaining $250 would be applied to restitution as would all future support payments made to her by her ex-husband.

The record before the court does not contain a complete statement of Huggett's payments, but it does show that many payments were made into court. There is no information in the record regarding Huggett's behavior during the five-year probation period, except the trial court's comment in its denial of post conviction motions that during probation Huggett "was brought before the Court for minor infractions of the law." The record does not indicate the nature of the infractions.

On April 7, 1975, when the five-year probationary period was coming to an end, Huggett signed a one-page Division of Corrections printed form No. C–1–1 (12–68), entitled "Waiver of Court Appearance and Order of Court." The record is silent as to what Huggett had been told as to her rights on extension of probation except for a statement in her post-conviction papers that she was not informed of any right to contest the extension.

The first part of the form completed by the Department of Health and Social Services states that Huggett had been convicted of theft, placed on probation for two years [sic] and that "since she [Huggett] has not been able to fully comply with the conditions set forth by the probation, her return to court, for further disposition, has been ordered for the reason(s) that restitution has not been paid in full."

The second part of the form, captioned "Waiver of Court Appearance Only," was completed and signed by Huggett and witnessed by the probation officer, and is set forth below:

### "WAIVER OF COURT APPEARANCE ONLY

"Now, therefore, because I am presently <u>unemployed</u>

"I respectfully request permission to waive my right of personal appearance in Court and further ask that <u>my probation be extended for two years or until such costs are paid.</u>"

The third part of the form is a printed court order with space for insertions which states in its entirety as follows:

### "SPACE BELOW TO BE COMPLETED BY THE COURT

"The State Department of Health and Social Services having ordered the aforesaid to be returned to this Court for the above reason (s).

"It is ordered that under the provision of Chapter 973 of the Wisconsin Statutes the following action hereby is taken:

" 'Probation extended as provided by Sec. 973.09 (3) of the Wisconsin Statutes for a period of two years from 07–22–75 or until court obligations are paid, providing such payment is made within the extended period.'

"Restitution: $5,857.96.

"Date: <u>4–9–75</u>          By the Court <u>S/ H. W. McEssy</u>
                                                              Judge

"Dated this <u>29</u> day of <u>April,</u> 1975

                                      <u>S/ H. W. McEssy</u>
                                                Judge"

This printed form was intended to fulfill the statutory requirement that a court may, for cause, order extension of probation. Sec. 973.09 (3), Stats., provides:

"Prior to the expiration of any probation period, the court may for cause by order extend probation for a

stated period or modify the terms and conditions thereof."

The court order extending probation shows the amount of restitution owing as $5,857.96. The record does not show how the court arrived at this figure. In any event, on the basis of this court order it appears that in nearly five years of probation Huggett has repaid $675.

In January 1976, six months into the extended probation period, a probation violation warrant was issued charging Huggett as an absconder. Huggett waived her probation revocation hearing, and probation was revoked February 11, 1976. On February 18, 1976, Huggett was received at the Taycheedah Correctional Institution to begin serving the executed five-year sentence.

At no time did Huggett ask the court to modify or remove the condition that she make restitution.

On April 21, 1976, Huggett, represented by the State Public Defender, moved for post-conviction relief. A hearing was held on the motion on May 20, 1976, and during that hearing, the State stipulated that Huggett had been indigent at all times subsequent to her conviction.

The trial court denied post-conviction relief. In its decision the trial court noted that Huggett "did make certain payments of restitution. Only those payments were made which in the opinion of the probation officer were reasonable under all the circumstances." As to the extension of probation without Huggett's appearance, the trial court determined that Huggett waived her appearance at the extension hearing and that the revocation of probation "was for rule violations other than for failure to pay restitution." It is this order denying Huggett post-conviction relief which Huggett asks this court to review.

On October 29, 1976 this court ordered Huggett released from custody pending review of the trial court's order denying her motion for post-conviction relief.

To put this appeal in proper perspective, we state first those issues which Huggett does not raise on appeal. On appeal Huggett does not attempt to justify having left the state without the permission of her probation officer. Nor does Huggett challenge on appeal the sums of restitution imposed as a condition of probation.

Sec. 973.09 (1), Stats., provides that "when a person is convicted of a crime, the court may, by order . . . place him on probation to the department . . . and may impose any conditions which appear to be reasonable and appropriate." This statute authorizes the imposition of restitution in a proper case as a reasonable and appropriate condition of probation. *State v. O'Connor*, 77 Wis.2d 261, 294, 252 N.W.2d 671 (1977).

This court has adopted Sec. 3.2 of the American Bar Association *Standards Relating to Probation* (Approved Draft 1970), which sets forth appropriate conditions of probation. Sec. 3.2 provides, in pertinent part, as follows:[3]

---

[3] In its entirety, 3.2 reads as follows:

"3.2 *Nature and determination of conditions.*

"(a) It should be a condition of every sentence to probation that the probationer lead a law-abiding life during the period of his probation. No other conditions should be required by statute; but the sentencing court should be authorized to prescribe additional conditions to fit the circumstances of each case. Development of standard conditions as a guide to sentencing courts is appropriate so long as such conditions are not routinely imposed.

"(b) Conditions imposed by the court should be designed to assist the probationer in leading a law-abiding life. They should be reasonably related to his rehabilitation and not unduly restrictive of his liberty or incompatible with his freedom of religion. They should not be so vague or ambiguous as to give no real guidance.

"(c) Conditions may appropriately deal with matters such as the following:

"...

"(viii) making restitution of the fruits of the crime or reparation for loss or damage caused thereby.

"(d) Conditions requiring payment of . . . restitution . . . should not go beyond the probationer's ability to pay."[4]

*See State v. Garner,* 54 Wis.2d 100, 106, 194 N.W.2d 649 (1972) ; *State v. Gerard,* 57 Wis.2d 611, 619, 205 N.W. 2d 374 (1973), app. dismissed 414 U.S. 804 (1973) ; *Edwards v. State,* 74 Wis.2d 79, 81, 246 N.W.2d 109 (1976).[5]

---

"(c) Conditions may appropriately deal with matters such as the following:

"(i) cooperating with a program of supervision;

"(ii) meeting family responsibilities;

"(iii) maintaining steady employment or engaging or refraining from engaging in a specific employment or occupation;

"(iv) pursuing prescribed educational or vocational training;

"(v) undergoing available medical or psychiatric treatment;

"(vi) maintaining residence in a prescribed area or in a special facility established for or available to persons on probation;

"(vii) refraining from consorting with certain types of people or frequenting certain types of places;

"(viii) making restitution of the fruits of the crime or reparation for loss or damage caused thereby.

"(d) Conditions requiring payment of fines, restitution, reparation, or family support should not go beyond the probationer's ability to pay.

"(e) The performance bond now authorized in some jurisdictions should not be employed as a condition of probation.

"(f) Probationers should not be required to pay the costs of probation."

[4] The Model Penal Code utilizes the same standard. "The court, as a condition of its order, may require the defendant: . . . (h) to make restitution of the fruits of his crime or to make reparation, in an amount he can afford to pay, for the loss or damage caused thereby." Model Penal Code 301.1(1) and (2), Proposed Official Draft, 1962.

[5] This court will review conditions of probation to determine reasonableness. *See e.g., Edwards v. State,* 74 Wis.2d 79, 246 N.W.

The validity and reasonableness of a condition of probation must be measured by how well it serves to effectuate the objectives of probation.[6] The dual goals of probation are "the rehabilitation of those convicted of crime and the protection of the state and community interest." *State v. Tarrell,* 74 Wis.2d 647, 653, 247 N.W. 2d 696 (1976).

Restitution can aid an offender's rehabilitation by strengthening the individual's sense of responsibility. The probationer may learn to consider more carefully the consequences of his or her actions. One who successfully makes restitution should have a positive sense of having earned a fresh start and will have tangible evidence of his or her capacity to alter old behavior patterns and lead a law-abiding life. Conditioning probation on making restitution also protects the community's interest in having the victims of crime made whole. However, conditioning probation on the satisfaction of requirements

---

2d 109 (1976); *State v. Schlueter,* 262 Wis. 602, 55 N.W.2d 878 (1952); *Brozosky v. State,* 197 Wis. 446, 222 N.W. 311 (1928). Such review is essential because, although the trial court must have discretion to fashion effective sanctions, unreviewed exercise of discretion could result in the imposition of restraints which bear no reasonable relation to the purposes of probation. *See* Note, *Judicial Review of Probation Conditions,* 67 Colum. L. Rev. 181 (1967).

[6] *See State of New Jersey in the Interest of D.G.W.,* 70 N.J. 488, 361 A.2d 513, 520 (1976); Merceret, *Sentencing Alternatives to Fine & Imprisonment,* 31 U. Miami L. Rev. 387 (1977); Imlay and Glasheen, *See What Condition Your Conditions Are In,* 35 Fed. Prob. 3 (1971); Schafer, *Restitution to Victims of Crime—An Old Correctional Aim Modernized,* 50 Minn. L. Rev. 243 (1965); Best and Birzon, *Conditions of Probation: In Analysis,* 51 Geo. L. J. 809 (1963); Note, *Use of Restitution in the Criminal Process: People v. Miller,* 16 U.C.L.A. L. Rev. 456, 456 (1969).

which are beyond the probationer's control undermines the probationer's sense of responsibility.[7]

Huggett's primary assertion on appeal is that she was not properly on probationary status at the time she left the state, because there was no justifiable basis for the Division of Corrections' continuing jurisdiction over her. Huggett claims that under the facts and circumstances of this case the extension of probation violated her constitutional rights and was an abuse of the trial court's discretion. Her basic contention is that because there was no authority to extend probation, she cannot be held to have violated probation and her original sentence cannot be executed.

Huggett claims that her probation was continued only because of her indigency. If she had the money and had made full restitution, she would have been discharged from probation on July 22, 1975. She claims she is, in effect, being subjected to imprisonment because she failed to satisfy a monetary obligation which she was unable to meet because of indigency. Thus her imprisonment is in contravention of the federal and state constitutional guarantees of equal protection of the laws.[8]

Huggett further claims that the trial court abused its discretion under sec. 973.09, Stats., in extending probation for purposes of restitution because the trial court had no basis for expecting that the $5,857.96 could be paid off in the two-year extended period. At the original rate of restitution established at conviction, apparently $20 per month, it would have taken Huggett twenty-seven years to repay the sum ordered. At the actual

---

[7] See State v. Garner, 115 Ariz. 579, 566 P.2d 1055, 1057 (1977); State v. Harris, 70 N.J. 586, 592, 596, 362 A.2d 32 (1976).

[8] The cases relied on by Huggett arise in the factual context of the defendant's inability to pay a fine. See, e.g., Williams v. Illinois, 399 U.S. 235 (1970); State ex rel. Pedersen v. Blessinger, 56 Wis.2d 286, 201 N.W.2d 778 (1972); West Allis v. State ex rel. Tochalauski, 67 Wis.2d 26, 226 N.W.2d 424 (1975).

rate of payment, approximately $135 per year, it would take her forty-three years from the date of extension of probation to repay the sum of $5,857.96.

We have previously emphasized the importance of the trial court's determining a probationer's ability to pay in imposing restitution. In *State v. Gerard*, 57 Wis.2d 611, 205 N.W.2d 374 (1973), a defendant whose probation was revoked for, among other things, failing to make restitution, challenged the appropriateness of restitution as a condition of his probation. We viewed the court order of restitution in the amount of $30,000 as appropriate, because "the court did ascertain the defendant's ability to pay. True, at the time of sentencing and imposing the conditions of probation the defendant was indigent, but the defendant informed the court that if put on probation he was confident that he could obtain employment. This led the court to believe he would have suitable employment, would no longer be indigent, and therefore would have the ability to pay." *Id.* at 621. While on probation the defendant did have several jobs. He had the ability to make some restitution, but he refused to do so. We upheld the probation revocation, because "indigency did not cause his probation to be revoked, but rather his own refusal to at least attempt compliance." We quoted with approval the following language from *In re Antazo*, 3 Cal.3d 100, 89 Cal. Rptr. 255, 473 P.2d 999 (1970):

". . . When the indigent offender refuses to avail himself of such alternatives at the inception, or defaults or otherwise fails to meet the conditions of the particular alternative which is offered him without a showing of reasonable excuse, the indigent offender becomes in the eyes of the court exactly the same as the contumacious offender who is not indigent. When either of these conditions obtain the offender's *indigency* ceases to be dispositive and he may, consistently with the mandate of

the equal protection clause, be relegated to 'working out' his fine by imprisonment."

The case at bar is distinguishable from *Gerard* because the trial court here noted that "payments were made which in the opinion of the probation officer were reasonable under all the circumstances." The case at bar does not appear to involve a probationer who has refused to attempt compliance with the conditions of restitution.

In *Gerard* we stated that a probationer may show cause why he or she should not be required to comply with the condition of restitution, and the trial court may exercise its discretion to modify or relieve the probationer of restitution. The authority of the trial court to alter conditions of probation is set forth in sec. 973.-09(3), Stats.:

"(3) Prior to the expiration of any probation period, the court may for cause by order extend probation for a stated period or modify the terms and conditions thereof."

We said that the cause contemplated by the statute "includes impossibility, undue hardship and probably other causes." *Gerard, supra,* 57 Wis.2d at 625.

The State's brief in the case at bar asserts that "the county court, exercising its discretion to the fullest extent possible (*given the limited information put before it*), properly extended defendant's probation . . . 'for cause' within the meaning of sec. 973.09(3), Stats." (Emphasis supplied.) The State argues that at the time of the extension of probation the trial court could reasonably expect that Huggett's financial status might change during the extended probation period. The State claims that it was Huggett's responsibility to challenge that assumption and prove not only that she was indigent but also that although given a longer period in

which to pay, she still would be absolutely unable to do so. Huggett failed to meet this responsibility. She did not ask the trial court to modify the terms of restitution, and she formally waived a court hearing on the extension of probation when she requested the extension and signed the waiver form.

We conclude from the record before us that the real controversy in the instant case has not been fully tried, namely whether the trial court had cause to extend probation. More specifically in the case at bar, the issue is whether Huggett's failure to make full restitution was adequate cause for extension. The State is correct that this issue might have been explored at the request of Huggett either at a hearing for a modification of the terms of restitution or at a hearing on the extension of probation.[9] However, neither hearing took place. We need not deal with the question of whether Huggett waived her right to these hearings.[10] The statute allows extension of probation only "for cause." We do not believe the record before us adequately documents the existence of such cause.

Accordingly we conclude that justice may have miscarried, and this case is one in which we should exercise our discretion under sec. 251.09, Stats.:

---

[9] The State concedes that a probationer has a right to a hearing prior to extension of probation.

[10] The State asserts that Huggett validly waived the hearing when she signed a form waiving her court appearance and requesting extension of probation.

Huggett contends that the trial court failed to make an adequate record to support a conclusion that the waiver was knowing and valid. She further asserts that the waiver was not valid because she was not advised of her rights and that under the circumstances of this case, she was entitled to counsel at the hearing to assert her constitutional rights. *Cf. Gagnon v. Scarpelli,* 411 U.S. 778, 782 (1973).

"251.09 Discretionary reversal. In any action or proceeding brought to the supreme court by appeal or writ of error, if it shall appear to that court from the record, that the real controversy has not been fully tried, or that it is probable that justice has for any reason miscarried, the supreme court may in its discretion reverse the judgment or order appealed from, regardless of the question whether proper motions, objections, or exceptions appear in the record or not, . . . ."

We vacate the order of the trial court and remand the matter for a hearing and a determination of whether there was cause to extend probation in order to allow restitution to be made.

Failure to make restitution within the original probation period might constitute cause for extending probation and continuing restitution if there is a basis for believing that additional restitution would effectuate the objectives of probation and that Huggett could make more than negligible payments during the extended period. In assessing her ability to pay, the trial court should first establish a clear account of exactly how much Huggett has paid and what the source of each payment was. Other pertinent considerations in determining ability to pay include: employment history during the probationary period; employment status at the time of the extension; prospects for future employment; sources of income; the cost of supporting the probationer's dependents; and other competing demands on the probationer's income. The court in extending probation for further restitution should also consider Huggett's demonstration of a good faith effort to make restitution.

If the probationer lacks the capacity to pay and has demonstrated a good faith effort during probation, failure to make restitution cannot be "cause" for extending probation. As we have noted previously, the criminal

justice system should not be employed to supplement a civil suit or as a threat to coerce the payment of a civil liability or to perform the functions of a collection agency. *State v. Scherr*, 9 Wis.2d 418, 424, 101 N.W.2d 77 (1960).[11]

If on remand the trial court determines that there was adequate cause for extending probation for purposes of restitution, a not very likely result in view of the record before us, the Department of Health and Social Services must determine whether Huggett violated probation in January 1976 and should be ordered to prison. In light of the fact that more than two years have passed and that Huggett has served time in prison for violating the rules of probation, the Department's disposition of the January 1976 charge of absconding should be based on Huggett's behavior subsequent to her return to Wisconsin in February 1976.

If, on remand, the trial court determines that there was no adequate cause for extending probation to require additional restitution, Huggett must be released from supervision as of July 22, 1975. If Huggett was not properly on probation at the time of absconding, revocation of probation and execution of the sentence would be beyond the State's authority.

*By the Court.*—Order vacated and cause remanded for proceedings consistent with this opinion.

WILLIAM G. CALLOW, J. (*dissenting*). The majority concludes the case must be returned to the trial court for findings concerning the defendant's ability to meet the restitution condition of probation and the reasonableness of the extension of the period of time of probation. The majority implies the probation condition re-

---

[11] For a discussion of the negative reaction of Wisconsin probation officers to performing collection agency functions, *see* Dawson, *Sentencing: The Decision as to Type, Length, and Conditions of Sentence* 105 (Remington, Ed. 1969).

quiring restitution should be withdrawn and restitution forgiven if the defendant is found to be unable to make restitution during the initial term of probation. I concede the reasonableness of scheduling a hearing before the court if the defendant fails to make regular payments toward restitution or appears to be unable to meet the restitution payment condition of probation, but the impetus for such a hearing must be upon the defendant.

Trial judges know the defendant at the time of sentencing pleads for probation and proclaims a desire to make restitution to the victim of the crime where property loss is the subject of the criminal conduct. Frequently, the prospect that restitution will be paid appears remote. The trial judge and the defendant should be able to anticipate that the defendant's failure to meet the restitution condition of probation will likely result in revocation of probation and a return of the defendant to court for the imposition of the penalty that was in essence deferred upon the commitment of the defendant to make restitution. The majority opinion weakens that probability and will tend to discourage the trial judge from granting probation. The judge who concludes that restitution is improbable will therefore deny probation. The majority opinion results in excusing the defendant from punishment and restitution if circumstances show at a later time that restitution will be difficult. Thus the defendants who, at the time of sentencing, appear to be unable to make restitution may be deprived of probation or placed on probation for the maximum period to utilize the maximum period of time to collect restitution. The likelihood under the majority opinion that the defendant may escape punishment discourages the trial judge from accepting the defendant's representation that he is sincere in his plans to change his ways, become a productive citizen, and apply his energy to prompt payment of restitution during a reasonable peri-

od of probation. This appears to be exceedingly prejudicial to the defendant.

A better result would be to provide that, where the defendant requests probation at the time of sentencing and accepts restitution as a condition of probation, restitution shall be presumed to be within the ability of the defendant to pay until the defendant petitions the court for a hearing on the reasonableness of the order for restitution. Obviously the victim is not a party to the action and will not be able to advise the court of his need to receive the restitution. The burden of showing an inability to meet the restitution as a condition of probation requirement shall be upon the defendant. That burden shall be met upon a showing of clear, satisfactory, and convincing evidence that payment of restitution, in part or in full, is beyond the ability of the defendant. If the defendant chooses to consent to an extension of probation because the restitution condition, and any other condition, has not been met, the court may approve the extension without hearing. The defendant should be advised of these conditions at the time of sentencing.

The old saw "crime does not pay" should become a legal reality whenever possible. Society and the law should require that the "criminal shall repay." In order to accommodate such a result every reasonable effort should be made to require the defendant to make restitution and to recognize that victims should not suffer financial loss. The implication of the majority opinion is that the victim could commence a civil suit against the defendant for recovery of the loss resulting from the defendant's criminal act. This is a burden and an expense which should not be thrust upon the innocent victim of the crime.

The defendant who has a limited earning ability may require some welfare assistance to sustain him and his dependents during the period of time when restitution

payments take a portion of his weekly earnings, but it is more reasonable to have the public assist the defendant through welfare and have the victim of the crime reimbursed through restitution than to omit restitution on the premise that the defendant's funds are more appropriate for his or his dependents' support. The principle that the defendant should "pay his debt to society" should be refined to provide that the defendant shall pay his debt to his victim, plus interest, on the value of the property during the period the victim is deprived of his property.

The defendant must be made aware of the impact of the crime upon the victim. The personalization of the crime that occurs when the victim and the defendant meet in a court or a probation department conference to determine the value of the property lost by the victim has a significant impact on the defendant and is an important rehabilitative tool. The trial judge should monitor restitution by requiring regular interval reports and require court appearances by the defendant if restitution goals are not being met. Pride in accomplishing restitution will help the defendant to regain self-respect and an improved self-image. These are fundamental goals of probation and should be supervised by the court.

Probation is viewed with suspicion by the public and often viewed as an escape from punishment by the defendant. The defendant who pleads for probation should recognize that probation is a "second chance" to prove that he will act responsibly and that accountability means making the victim whole. Probation contemplates the passage of time, and many defendants view this passage of time as a time for memories of the crime to dim. Memories of the loss experienced by the victim must never be allowed to dim until the loss experienced by the victim has been paid by the offender.

The majority remands for a trial court hearing on the defendant's financial circumstances at the time of exten-

sion of probation with direction to vacate the extension of probation if there was no adequate cause for extending probation. The defendant asked for and received a probation extension, waived a hearing on extension, accepted extended supervision, and absconded. The statutes gave her ample remedies if she determined the conditions of probation were unreasonable. She did not utilize them. She was properly on probation and subject to revocation for the violation of probation. She is not entitled to the relief granted by the majority.

I am hereby authorized to state that Mr. Justice LEO B. HANLEY and Mr. Justice CONNOR T. HANSEN join in this dissenting opinion.