WILL, Plaintiff in error, v. STATE, Defendant in error.

*No. 76–366–CR. Argued June 7, 1978.—Decided June 30, 1978.*
(Also reported in 267 N.W.2d 357.)

398

For the plaintiff in error there was a brief and oral argument by *Howard B. Eisenberg*, state public defender.

For the defendant in error the cause was argued by *Edward S. Marion*, assistant attorney general, with whom on the brief was *Bronson C. La Follette*, attorney general.

CALLOW, J.   The single issue in this case is the constitutionality of an order requiring an indigent offender to pay his $250 fine plus costs in ninety days or be imprisoned for twenty-five days for nonpayment of the fine.

On October 30, 1975, John F. Will pleaded guilty to operating a motor vehicle while under the influence of an intoxicant, contrary to sec. 346.63(1)(a), Stats., before the Honorable William H. Carver, County Judge. Mr. Will had two previous convictions for the same offense in 1970 and 1971. Because he had already made some progress in an alcoholic treatment program, the State recommended that the minimum sentence of five

days be imposed.[1] On November 3, 1975, Judge Carver sentenced Mr. Will to five days in jail and a fine of $250 and costs or in the alternative an additional twenty-five days in jail. Defendant's counsel then informed the court that Mr. Will was unable to pay a fine. The court responded that, in view of the two prior offenses, the $250 fine was the minimum fine he could impose.

Since the trial court did not make the fine payable at some future date, the fine was payable forthwith. Sec. 973.05(1), Stats. As a result, the defendant petitioned the court to relieve him from the twenty-five day alternative jail sentence and release him from jail after serving the five-day jail sentence on the grounds that he was unable to pay a $250 fine and costs. At the hearing on this petition, the defendant testified that he was twenty-three years of age, that his lawyer was court appointed, and that he had not completed the eleventh grade. He had been in a serious automobile accident in which he suffered injury to his brain and hip. As a result, he spent nine months in Winnebago Hospital. Because of the hip injury, he is classified by the Social Security Administration as totally disabled. His only income is $228 per month in disability benefits. He has a job as a part-time commission salesman, but in the six months of his employment he has made only $50. He stated that in the past few months he has attempted to find some other work but was told by the State Unemployment Office to await an update on the work limitation caused by his disability. His parents are living and divorced. His mother is unemployed, and her source of income is AFDC, while his father is also unemployed and does not own a car or a home. The defendant testified that he did not own a car but that the car he was driving when he was

---

[1] The penalty for a second or subsequent conviction of this offense within five years is imprisonment for not less than five days nor more than one year. In addition, a fine of not more than $500 may be assessed. Sec. 346.65(2), Stats.

arrested was in his and his old girlfriend's names. He owns a watch worth about $10. The furniture in his apartment belongs to his elder sister. His expenses are $109 per month for rent, $40 per month for utilities, and $20 per week for food. When his disability income runs out, he eats at his mother's or his girlfriend's home. He has a roommate, but his roommate is also unemployed. When he drank, he used the grocery money. He paid a fine recently for driving without an operator's license by borrowing the money from his old girlfriend. The trial court finally asked Mr. Will when he was going to be able to pay the fine, and he said "This I wouldn't really know, sir." The trial court did not reduce the fine but ruled instead that:

"[T]he Court can extend the defendant some opportunity and time to pay, but I don't think the defendant under these circumstances can continuously avoid the responsibility of paying the fine and we don't—do not necessarily have to go through one of these hearings every time the time comes up for the defendant to avoid responsibility of paying."

The court gave the defendant ninety days to pay:

"Schedule the matter for payment on or before February 9 at nine o'clock here in this courtroom or there will be an alternative of 25 days in the County Jail and it's my understanding the Court can enforce that with the jail sentence. He will have almost six months from the time this ticket was issued until such time as he's been ordered to pay here and I would think that within that six-month period he ought to be able to afford to pay the fine, $259 it is. The alternative is 25 days in the County Jail."

The defendant appealed the trial court's order to the circuit court. The sentence was stayed pending appeal, and on April 15, 1976, the circuit court, the Honorable William E. Crane, presiding, summarily affirmed the trial court. The defendant now brings a writ of error to

this court to review the affirmance by the circuit court. The circuit court stayed execution of the sentence pending this review.

Although the United States Supreme Court has declined to consider wealth a suspect classification in all circumstances, *San Antonio School District v. Rodriguez*, 411 U.S. 1 (1973), the Supreme Court has held that differences in treatment by the criminal justice system based on wealth require strict judicial scrutiny. In *Tate v. Short*, 401 U.S. 395 (1971), *Morris v. Schoonfield*, 399 U.S. 508 (1970) (Per Curiam), and *Williams v. Illinois*, 399 U.S. 235 (1970), the Court held that the equal protection clause restricts the state's power to collect a fine from a defendant without the means to pay. We have previously held that: "What these cases [*Williams, Morris*, and *Tate*] teach is that one who has been convicted of a crime and fined is not to be imprisoned in satisfaction of the fine or in lieu thereof if he is unable to pay the fine." *State ex rel. Pedersen v. Blessinger*, 56 Wis.2d 286, 289, 201 N.W.2d 778 (1972). Under the *Williams, Morris*, and *Tate* rationale, no equal protection violation occurs when an indigent offender is originally sentenced to confinement; for when he is originally sentenced to confinement, he is being punished for the crime. But once a sentencing judge has determined a fine to be the appropriate penalty, a defendant who is incarcerated merely because he is without the means to pay the fine is being incarcerated not for the crime but for his poverty, and such incarceration is illegal. On the other hand, when an indigent defender upon whom a fine has been imposed lacks the diligence to meet a reasonable payment schedule, his refusal to pay the fine results from contumacy and not indigency, and incarceration is permissible to punish the refusal to pay. *Tate v. Short, supra* at 400; *Williams v. Illinois, supra* at 242 n. 19; *State ex rel. Pedersen v. Blessinger, supra* at 295.

Sec. 973.05 gives the court power to grant permission for the payment of the fine to be made within a period not to exceed sixty days. Sec. 973.07 provides that "When a fine or the costs are not paid as required by the sentence, the defendant may be committed to the county jail until the fine and costs are paid or discharged for a period fixed by the court not to exceed 6 months." We held in *Pedersen* that, though both statutes are constitutional on their face, they must be applied with some modifications to indigent offenders. We also held that the period of sixty days for payment of a fine in sec. 973.05(1), Stats., since it is "the equivalent time-wise in most cases of instalment payment," is reasonable in most cases. 56 Wis.2d at 294. But we also pointed out that sec. 973.05(1):

". . . does not prevent a trial court from exercising its inherent power to stay the sentence providing for payment within sixty days upon such terms as the court may then find to be just. This inherent power to stay a sentence to meet the needs of an individual case must be construed as part and parcel of the statute." *Id.* at 294.

Similarly, we held that sec. 973.07, Stats., calling for imprisonment for nonpayment of a fine, is constitutional in cases where the defendant has the ability to pay the fine and will not. "In such case, the defendant has a key to his imprisonment and it is only his contumacy which keeps him from enjoying his liberty." But for an offender unable "in fact and in truth" to pay the fine, sec. 973.07 is discriminatory and cannot be applied: "Under such conditions he is imprisoned because of his poverty." *Id.* at 295.

In *Pedersen,* we set out the following procedure to be followed in cases where the defendant claims he is unable to pay a fine: (1) We encouraged trial courts to follow a practice of ascertaining the defendant's ability to pay

a fine at the time of sentencing. 56 Wis.2d at 296. At this time the court should determine an amount and payment schedule in keeping with the defendant's means. *See:* ABA *Standards Relating to Sentencing Alternatives and Procedures,* sec. 2.7 (1968); quoted in *Pedersen, supra* at 291 n. 2. (2) If, thereafter, the defendant is unable to pay the fine imposed, he has the burden to apply to the court for relief, either within the time given by the court for payment or prior to commitment to jail for nonpayment pursuant to sec. 973.07, Stats. 56 Wis.2d 295–6. In addition, we also emphasized that, in a case where a fine once imposed becomes beyond the offender's means, within ninety days of sentencing the trial court may change or modify the sentence. In *Pedersen* we observed that taken together these procedures give the trial court sufficient flexibility to avoid unconstitutionally imprisoning the offender who is unable to pay the fine.

In *West Allis v. State ex rel. Tochalauski,* 67 Wis.2d 26, 226 N.W.2d 424 (1975), we pointed out that a determination of the defendant's ability to pay a fine is mandatory only if and when the offender calls to the judge's attention the fact that he is unable to pay the fine. In *West Allis* we emphasized that a defendant convicted of an ordinance violation who believes himself indigent can and should apply to the court for resentencing at any point up until the effective date of a stayed sentence. "If the defendant makes a proper request for relief on the basis of his inability to pay the forfeiture," we held that the sentencing court must "make a determination on that issue ." 67 Wis.2d at 32.

A fine can be a useful sentencing alternative for offenders, particularly in cases where incarceration or rehabilitation is unnecessary or where money deprivation may have a deterrent effect, but the deterrent effect of a fine depends in part upon its impact on the financial resources of the offender. *See generally:* Note, *Fining The*

*Indigent,* 71 Columbia L. Rev. 1281, 1283-4 (1971) ; Comment, *Installment Payments: A Solution To The Problem Of Fining Indigents,* 24 U. of Fla. L. Rev. 166 (1971). Thus in *Pedersen* we encouraged trial courts to determine the defendant's ability to pay at the time of sentencing. However, trial courts should exercise caution in the manner in which the inquiry is conducted. The trial courts should avoid the implication that incarceration is the selected sentencing alternative solely because the defendant could not pay a fine if one were imposed. But once the sentencing court determines that a fine is an appropriate sanction under the circumstances and that the defendant has the ability to pay it, an indigent offender should be accorded a fair method of paying his fine. Though in *Pedersen* this court declined to require the trial court to use the installment method when dealing with indigent offenders holding that a future date for total payment in lieu of payment in installments is acceptable, some commentators on sentencing have observed that in almost every case imprisonment can be avoided by allowing the indigent to pay his fine over time.[2] We encourage trial courts to use the installment method, since a simple installment checkoff system at the trial court level would not be difficult to establish.

In this case, despite notice at the sentencing that the defendant claimed he was unable to pay the fine, the trial court stated that the fine was the minimum he could impose and did not consider modifying the sentence to take the defendant's means into account. The defendant then petitioned the court for relief, as required by *Ped-*

[2] Miller, *The Fine—Price Tag or Rehabilitative Force?* 2 Crime and Delinquency, 377, 383 (1956); Note, *Equal Protection and Imprisonment for Nonpayment of Fines,* 13 S. D. L. Rev. 159, 168 (1968); Note, *The Equal Protection Clause and Imprisonment of Indigents for Nonpayment of Fines,* 64 Mich. L. Rev. 938 (1966).

*ersen,* but at the hearing on this motion the court made no findings of fact concerning the defendant's ability to pay. The court merely extended the payment period for ninety days. Finally, the court prohibited any further application to the court for relief from the sentence based on the offender's inability to pay. To the extent that the trial court's order prohibits further determination of the defendant's ability to pay at the end of the ninety days, that order is contrary to *Pedersen* and *West Allis,* and the sentence cannot be affirmed. We therefore modify the sentence to allow for a further petition by the defendant, if necessary, for relief based on inability to pay.

*Pedersen* gives the sentencing court discretion to give an indigent defendant more than the sixty days specified in sec. 973.05(1), Stats., in which to pay a fine. The trial court here appropriately gave the defendant such an extended period of time. However, the record contains no reasoning by the trial court that the ninety-day period selected by the court would constitute a reasonable payment schedule for this defendant. This is not to imply that for this defendant a ninety-day payment period for a $250 fine is unreasonable, but rather that the trial court apparently chose the ninety-day period arbitrarily without evaluating the defendant's circumstances or stating reasons why it was reasonable to require payment within that period.

Judicial discretion should be exercised not only as to the sentence but also as to the terms of the execution of the sentence, and the reasoning of the judge in both respects should be shown on the record. Determining a payment schedule that is in accordance with the defendant's ability to pay will facilitate the orderly implementation of the sentence. Once a fine and a payment schedule are reasonably suited to the offender's means, the offender carries the heavy burden of showing that such an

individualized payment schedule is in fact beyond his means. We emphasized in *Pederson, supra* at 295, that "the inability to pay and the question of indigency are relative terms and in the case of a fine, the trial courts should take a long and hard look upon the argument of inability to pay in our affluent society." A payment schedule suited to the defendant's means will reduce the need for further applications to the court for relief from the sentence.

The Public Defender urges this court to adopt a rule limiting the time in which the state may pursue the collection of a fine from an indigent offender. By analogy to the procedure for incompetency determinations set out in *State ex rel. Haskins v. Dodge County Court*, 62 Wis. 2d 250, 214 N.W.2d 575 (1974), the Public Defender suggests that, if at the end of some stated period after the judgment of conviction, for example, one year, or if at any time during this period the offender is found unlikely to pay the fine at any foreseeable time, the fine should be discharged, leaving the state to its civil remedies for the collection of a fine. However, we find no authority, either in the statutes or our cases, for the permanent suspension of a sentence. As long as the defendant is afforded a reasonable payment schedule and as long as he is not imprisoned for his inability to pay the fine, we find no constitutional bar to the state's attempting to collect a fine for an indeterminate period of time.

We, therefore, decline to adopt the limitations proposed by the Public Defender. We reiterate our statement in *Pedersen* that the procedures set out therein give the trial court sufficient flexibility to avoid a violation of the equal protection clause in fining indigent offenders. We thus affirm the trial court's order giving the defendant ninety days to pay the fine, as modified, to permit further application by the defendant, if necessary, for a

modification in the sentence or the terms of the sentence on the grounds that he still is unable to pay.

*By the Court.*—Order modified and, as modified, affirmed.