STATE of Wisconsin,
Plaintiff-Respondent,

v.

Ahern RAMEL,
Defendant-Appellant.

Court of Appeals

*No. 2007AP355–CR. Submitted on briefs August 7, 2007.
—Decided November 14, 2007.*

2007 WI App 271

(Also reported in 743 N.W.2d 502.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *William J. Tyroler*, assistant state public defender of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Anne C. Murphy*, assistant attorney general and *J.B. Van Hollen*, attorney general.

Before Curley, P.J., Wedemeyer and Kessler, JJ.

¶ 1. KESSLER, J. Ahern Ramel appeals from the denial of his postconviction motion to vacate a fine of $1000[2] (which was imposed in addition to a prison sentence of ten years) on the grounds that the trial

---

[2] The transcript of the sentencing hearing indicates a fine of $1000 was imposed. Inexplicably, the judgment reports a fine of $903. As Ramel properly acknowledges, it appears that as a result of a clerical error, the mandatory costs of $20, $7, and $70 (totaling $97) were subtracted from the fine instead of being

court gave no explanation for imposition of the fine in addition to the prison term and, alternatively, from the denial of his postconviction request for an indigency hearing to determine whether he had an ability to pay the fine imposed. The motion was denied without a hearing. We reverse, vacate the fine, and remand to the trial court to correct the judgment accordingly.

## Background

¶ 2. Ramel was initially charged with second-degree sexual assault, as a repeater, and with kidnapping. On the day of trial, the charge was reduced to one count of third-degree sexual assault with the State free to argue anything at sentencing. Ramel entered a guilty plea. Later, after review of a presentence investigation report and extensive arguments by counsel, the court imposed a sentence, consecutive to any sentence Ramel was serving, comprised of five years of initial confinement followed by five years of extended supervision and a fine of $1000.

¶ 3. The record is devoid of *any* information about Ramel's financial condition at the time of sentencing, with the exception of a brief reference in the presentence report of "a vague employment history, which was unverifiable." The report described Ramel's only employment at the time was working at "Chimney Expert" as a mason earning ten dollars an hour. The report is silent as to whether this employment was full-time, part-time or only occasional. There is no identification of any assets Ramel might have had from which a fine could be paid. Neither the State, Ramel nor his counsel mentioned his financial or employment status at the sentencing hearing.

added as costs. The result is an erroneous judgment which reflects a fine of $903 instead of $1000.

¶ 4. After correctly observing that it must consider the nature of the offense, the interest of the community and the particular characteristics of the defendant, the trial court made lengthy sentencing comments. The court's comments demonstrate a detailed and thoughtful analysis of the incarceration and extended supervision portions of the sentence as they relate to Ramel's history, character and effect of his criminal activities on the community. We set out the sentencing comments in detail, in the sequence in which they occurred, in order to give context to the trial court's imposition of the fine.

> And, sir, you're 35 years of age. You have no high school education. You were residing primarily with your mother and your employment is kind of hard to verify and a little sketchy, but you have had some employment . . . . You had seven convictions as a juvenile . . . [a]nd . . . nine convictions as an adult . . . .
>
> You were on supervision at the time that this took place . . . . [Y]ou were very actively involved in using drugs and alcohol . . . .
>
> You had been out in the community seven months. You have been revoked and are now serving a three year sentence that was your extended supervision on your prior offenses.
>
> You have a history of having some difficulty coming to terms with responsibility . . . . [T]he letter from your family and from your girlfriend . . . both say that you've never had problems with women in the past . . . yet if you look back in your history, it's been going on since you were a juvenile. You were arrested for an offense as a juvenile . . . that came out of the fact that you were mad at a female peer. You have assaulted your mother on several occasions. You have . . . prior violence between you and . . . the mother of your child and there's

this victim. There is an ongoing problem with your relationship with women . . . .

[S]o many of these offenses were violent. The disorderly conducts, many of them were violent. The batteries were clearly violent. You have false imprisonment. Domestic abuse injunction violations and [the] very, very violent acts that you have imposed upon this particular victim. You have a very, very aggressive personality and it has pretty much gone unchecked.

. . . .

You have family. You have your mother. You have siblings. You have one child. You have an AODA history which is quite serious; goes back to when you were quite young. You've used fairly consistent use of alcohol, marijuana and cocaine. You've had many mental health interventions both in the juvenile and adult system. You have been diagnosed with depression, explosive disorder.

. . . .

[T]hat brings us basically to this . . . particular offense, which was extremely violent, extremely abusive . . . . It . . . was not a snapshot or a small period of an isolated incident. This went on for hours and hours and hours. You put this woman through hell is what you did.

[T]he matter was amended from a potential of 80 years of incarceration to 10 years of incarceration. You were given great consideration in that amendment. And now the Court has to come up with a sentence which would be appropriate given all these facts and circumstances; your age, your prior history, your correctional history, your long history of violence and the extremely violent and abusive nature of this particular assault on this woman.

¶ 5. After this impressively thorough and thoughtful statement, the trial court imposed the maxi-

mum prison term composed of equal periods of incarceration and extended supervision. The trial court then advised Ramel of the penalties that the Department of Corrections can impose as additional confinement time if he violates prison regulations, described the extension of his incarceration time if he is placed in segregation status, described the conditions of extended supervision that will be imposed by his extended supervision agent and, finally, imposed additional extended supervision conditions of abstinence from drugs or alcohol, obtaining full time employment, and having no contact with the victim or her family. A colloquy with counsel followed concerning a restitution figure, which counsel indicated would be provided later by stipulation. The trial court, at the State's request, then ordered HIV and STD tests and explained to Ramel that the results would be provided to the victim and to him.

¶ 6. The court next advised Ramel of what circumstances could lead to his being returned to prison for the remaining time on his sentence. A short colloquy followed between the trial court and Ramel's counsel about whether any sentence credit was to be applied. The court then advised Ramel of his right to appeal and of the collateral consequences of his felony conviction. Just before the proceedings concluded, the court stated:

> The Court will impose a thousand dollar fine plus costs and surcharges to be paid from prison wages not to exceed 25 percent and any remainder would be paid as a condition of your release plus your supervision fees and they would be paid in that same manner. Any portion of your financial obligations left unpaid at the end of your sentence would be converted to a civil judgment against you.

¶ 7. After sentencing, the case was transferred to a new judge due to judicial rotation. Ramel filed a

postconviction motion asking the court "to vacate the fine . . . on the ground that it was an erroneous exercise of discretion; [or,] alternatively . . . for an indigency hearing on his ability to pay" the fine. The trial court denied the motion, holding that there was no erroneous exercise of discretion because the maximum fine was $25,000, and "[t]aking his circumstances (i.e. that he would be in prison for a significant length of time) *and his indigency status* into consideration, the court imposed the most minimal fine possible." (Emphasis added.) Nothing in the record explains how the court concluded Ramel was in an "indigency status" at the postconviction hearing, or why that status and the length of incarceration made the fine "the most minimal fine possible." The postconviction court denied Ramel's request for an indigency hearing because "[t]he [trial] court did not order any jail time as a non-payment penalty for failing to pay the fine and costs of this action"[3] and because the "request is premature since it is not known at this time what his ability to pay will be during the period of extended supervision." This appeal followed.

### Standard of Review

¶ 8. The standards we employ in reviewing an imposed sentence are well-settled. *State v. Brown*, 2006 WI 131, ¶ 19, 298 Wis. 2d 37, 725 N.W.2d 262.

> A circuit court exercises its discretion at sentencing, and appellate review is limited to determining if the

---

[3] The trial court relied upon *State ex rel. Pedersen v. Blessinger*, 56 Wis. 2d 286, 290, 201 N.W.2d 778 (1972), which holds that "a jail sentence cannot be automatically substituted for a fine in the event the defendant is unable to immediately pay the fine."

court's discretion was erroneously exercised. This court stated in *McCleary [v. State ],* 49 Wis. 2d [263,] 281, 182 N.W.2d 512 [(1971)], that "[a]ppellate judges should not substitute their preference for a sentence merely because, had they been in the trial judge's position, they would have meted out a different sentence."

*Brown,* 298 Wis. 2d 37, ¶ 19 (citation omitted).

¶ 9. We will " 'search the record to determine whether in the exercise of proper discretion the sentence imposed can be sustained.' " *State v. Lechner,* 217 Wis. 2d 392, 419, 576 N.W.2d 912 (1998) (citation omitted). The trial court's findings of fact will not be reversed unless they are clearly erroneous. WIS. STAT. § 805.17(2) (2005–06).[4]

Where a trial court fails to make findings of fact, we have three options: (1) affirm the judgment if the trial court reached a result which the evidence would sustain had a specific finding supporting that result been made; (2) reverse if not so sustained; or (3) remand for additional findings and conclusions.

*Dodge v. Carauna,* 127 Wis. 2d 62, 67, 377 N.W.2d 208 (Ct. App. 1985) (citations omitted).

## *Discussion*

¶ 10. Ramel argues that *State v. Gallion,* 2004 WI 42, 270 Wis. 2d 535, 678 N.W.2d 197, and *McCleary* require an explanation for the fine imposed, and that *Will v. State,* 84 Wis. 2d 397, 267 N.W.2d 357 (1978), requires a determination at sentencing of whether he had the ability to pay the fine. The lack of both, he

---

[4] All references to the Wisconsin Statutes are to the 2005–06 version unless otherwise noted.

therefore argues, constitutes an erroneous exercise of sentencing discretion as to the fine. The State responds that the trial court's general explanation of reasons for sentencing Ramel to prison satisfies the *Gallion* and *McCleary* requirements, and that *State v. Kuechler*, 2003 WI App 245, ¶ 10, 268 Wis. 2d 192, 673 N.W.2d 335, holds that a court is not required to give separate reasons for imposing jail time and a fine.

█

¶ 11. *Gallion* reminds us of the analysis a sentencing court must perform as originally required by *McCleary*. *Gallion*, 270 Wis. 2d 535, ¶ 40. "Circuit courts are required to specify the objectives of the sentence on the record. These objectives include, but are not limited to, the protection of the community, punishment of the defendant, rehabilitation of the defendant, and deterrence to others." *Id.* The *Gallion* court further explained the methodology to be used to demonstrate the exercise of discretion in imposing sentence:

> Courts are to identify the general objectives of greatest importance . . . .
>
> Courts are to describe the facts relevant to these objectives. Courts must explain, in light of the facts of the case, why the particular component parts of the sentence imposed advance the specified objectives.
>
> Courts must also identify the factors that were considered in arriving at the sentence and indicate how those factors fit the objectives and influence the decision . . . .
>
> . . . .
>
> In short, we require that the court, by reference to the relevant facts and factors, explain how the

sentence's component parts promote the sentencing objectives. By stating this linkage on the record, courts will produce sentences that can be more easily reviewed for a proper exercise of discretion.

*Id.*, ¶¶ 41–43, 46.

¶ 12. However, the *Gallion* court also abjured the use of "magic words," *id.*, ¶ 37, reaffirmed that each sentence is personalized to the individual defendant, *id.*, ¶ 48, and noted that explanations need not be made with mathematical precision (such as explaining the difference between a sentence of fifteen and one of seventeen years), *id.*, ¶ 49. Here, as Ramel correctly observes, there is no finding in the record that he has an ability to pay the fine, and no explanation by the trial court for why it considered a fine to be an appropriate adjunct to its sentencing objectives in addition to the prison term already imposed.[5]

¶ 13. A fine is a substantially different form of sentence than incarceration. Our supreme court observed in *Will* that a fine can be a useful sentencing alternative, particularly when incarceration or rehabilitation is unnecessary or when, because of the financial resources of the offender, a fine may have a deterrent effect. *Id.*, 84 Wis. 2d at 404. If an offender has no ability to pay a fine, or no ability to pay the particular fine imposed, it is difficult to comprehend how a fine can be a useful sentencing alternative.

¶ 14. A fine that an offender has the ability to pay may satisfy sentencing objectives the trial court has found to be material and relevant to the particular defendant. *See id.* Here, however, with no explanation

[5] Ramel does not challenge the court's sentence insofar as it imposes a prison term.

from the sentencing court of how the fine imposed advanced those objectives, we are left to guess as to what those objectives might be in relation to the fine. *Gallion* requires that we do more than guess. *Id.*, 270 Wis. 2d 535, ¶ 46. While we do not hold that *Gallion* requires a trial court to explain the reason for a specific amount of a fine (as it is likewise not required to explain a specific time of incarceration), we do conclude that under *Gallion* some explanation of why the court imposes a fine is required.

█

¶ 15. It is also necessary that a sentencing court determine at the time of sentencing whether a defendant has the ability to pay a fine if the court intends to impose one. The standard for imposing a fine, which is part of the punishment, should require no less consideration of the defendant's ability to pay than is required as part of an order of restitution. *See State v. Loutsch*, 2003 WI App 16, ¶ 25, 259 Wis. 2d 901, 656 N.W.2d 781 (When court orders restitution at sentencing under Wis. Stat. § 973.20(13)(a), it must set "an amount of restitution that it determines the defendant will be able to pay before the completion of the sentence," which includes imprisonment, extended supervision and probation.). A fine is part of the sentence. Failure to complete one's sentence by full payment of the ordered fine may have significant collateral consequences, such as a delay in restoration of certain civil rights. *See* Wis. Stat. §§ 304.078; 6.03(1)(b). A trial court must consider the defendant's ability to pay the fine during the total sentence, that is, any term of probation, imprisonment and extended supervision.

¶ 16. In *Will*, our supreme court reviewed a sentence for operating a vehicle while intoxicated in which a sentence of five days in jail and a fine of $250 was

imposed. *Id.*, 84 Wis. 2d at 400. The fine was to be paid by a date certain, and an additional twenty-five days in jail was imposed as a sanction in the event of nonpayment. *Id.* at 399. Relying upon United States Supreme Court cases,[6] our supreme court observed that "the equal protection clause restricts the state's power to collect a fine from a defendant without the means to pay" and that the Supreme Court cases teach " 'that one who has been convicted of a crime and fined is not to be imprisoned in satisfaction of the fine or in lieu thereof if he is unable to pay the fine.' " *Id.* at 402 (quoting *State ex rel. Pedersen v. Blessinger*, 56 Wis. 2d 286, 289, 201 N.W.2d 778 (1972)). In further reliance on its earlier holding in *Pedersen*, the *Will* court noted:

> In *Pedersen*, we set out the following procedure to be followed in cases where the defendant claims he is unable to pay a fine: (1) We encouraged trial courts to follow a practice of ascertaining the defendant's ability to pay a fine at the time of sentencing. At this time the court should determine an amount and payment schedule in keeping with the defendant's means. (2) If, thereafter, the defendant is unable to pay the fine imposed, he has the burden to apply to the court for relief.

*Will*, 84 Wis. 2d at 403–04 (citations omitted).

¶ 17. The trial court in *Will* "made no findings of fact concerning the defendant's ability to pay" and "the record contains no reasoning by the trial court" that the payment period selected was reasonable for that defendant. *Id.* at 406. To avoid the imposed jail time as an automatic sanction for nonpayment, the court modified

---

[6] *Tate v. Short*, 401 U.S. 395 (1971); *Morris v. Schoonfield*, 399 U.S. 508 (1970) (per curiam); *Williams v. Illinois*, 399 U.S. 235 (1970).

the sentence to permit Will to petition for relief based upon his inability to pay the fine imposed. *Id.* at 401. Because the incarceration period was extremely short, only five days in jail, the review of Will's ability to pay would thus be almost immediate and have the same practical effect as a determination at the time of the original sentencing.

¶ 18. The problems of fines imposed on persons claiming an inability to pay was again reviewed by our supreme court in *State v. Milashoski*, 163 Wis. 2d 72, 471 N.W.2d 42 (1991). Milashoski, who had been convicted of manufacturing a substantial quantity of controlled substances, was sentenced to five years in prison, and a fine of $15,000. *Id.* at 80. He argued on appeal that the $15,000 fine imposed was error because he was indigent and had neither a current nor a foreseeable ability to pay such a fine. *Id.* at 88. The trial court implicitly found[7] an ability to pay based upon its consideration of Milashoski's assets, his debts and his prior "excellent" employment record before imposing the fine, and stated its reasons for imposing the maximum statutory fine. *Id.* A postconviction court removed the mandatory jail time originally imposed on Milashoski as a sanction for nonpayment by a time certain, and also permitted a later motion to modify the fine based upon ability to pay. *Id.* at 88–89. The supreme court concluded that imposition of the fine was not an erroneous exercise of discretion, noting that the postconviction modification took into account Milashoski's

---

[7] *See McCleary v. State*, 49 Wis. 2d 263, 282, 182 N.W.2d 512 (1971) ("[W]e are obliged to search the record to determine whether in the exercise of proper discretion the sentence imposed can be sustained. It is ... our duty to affirm the sentence on appeal if from the facts of record it is sustainable as a proper discretionary act.").

indigency, as well as his positive employment record and the prospects that he would continue employment at his father's business when released, at which time the trial court could set up an individualized payment plan. *Id.* at 89.

¶ 19. Here, unlike in *Milashoski*, Ramel had no significant employment history, and the trial court made no finding, either implicit or explicit, that Ramel had the present ability to pay a fine.

¶ 20. Where there has been a finding at sentencing of a defendant's ability to pay, and the sentence includes an ability to obtain review if the ability to pay changes, fines have been upheld. See State v. Perez, 170 Wis. 2d 130, 487 N.W.2d 630 (Ct. App. 1992); *Milashoski*, 163 Wis. 2d at 88. In *Perez*, we considered an appeal of a $6000 fine imposed on a band member from Florida after the court found that he had the ability to pay. *Id.*, 170 Wis. 2d at 133–34. We held that "[a]lthough the court tentatively found that Perez did have the ability to pay a $6000 fine, it also remarked that Perez could seek review of the fine after this case was resolved." *Id.* at 145. Relying on *Milashoski*, we "endorsed such an approach that does not prematurely relieve a defendant of a portion of a sentence." *Perez*, 170 Wis. 2d at 145. While premature relief from a fine is not to be encouraged or lightly granted, reaching even that conclusion presupposes that an initial finding has been made, even if tentative, that the defendant has an ability to pay a fine. Here, no such finding was made, nor was there evidence in the record which would support such a finding.

¶ 21. Ramel promptly raised his inability to pay in his postconviction motion. The postconviction court denied the motion without a hearing, holding that the

claim of no ability to pay was "premature" because ability to pay could only be determined when Ramel began extended supervision. That analysis is in error. *See Kuechler*, 268 Wis. 2d 192, ¶ 13 ("Because Kuechler timely raised the issue of ability to pay in his postconviction motion, the trial court had a duty to make a determination on that issue."); *State v. Iglesias*, 185 Wis. 2d 117, 129, 517 N.W.2d 175 (1994) ("Because Iglesias timely raised the issue of ability to pay in her postconviction motion, we agree that the circuit court had a duty to make a determination on that issue.") (relying on *Will*, 84 Wis. 2d at 404).

¶ 22. The State argues that the trial court satisfied the requirements imposed on it by the *Gallion*, *McCleary* and *Kuechler* decisions. Specifically, the State argues that our statements in *Kuechler*, 268 Wis. 2d 192, ¶ 10, that "[t]here is no requirement that a court give separate reasons for imposing jail or prison time than it gives for imposing a fine" and that "[t]he trial court's sentencing colloquy applies to both the prison time imposed and to the fine" determine the outcome here. The State reads *Kuechler* too narrowly.

¶ 23. Kuechler was convicted of the offense of operating a motor vehicle while intoxicated and sentenced based upon specific sentencing guidelines.[8] *Id.*, ¶ 1. In determining the appropriate sentence, the trial court discussed Kuechler's lengthy history of the same offense, his history of other violent offenses, that this offense occurred while he was on bond for another drunk driving offense, and explained that imposing

---

[8] The purpose of local guidelines is to inhibit sentencing disparity. *See State v. Jorgensen*, 2003 WI 105, ¶ 29, 264 Wis. 2d 157, 667 N.W.2d 318.

anything but what the guidelines called for would depreciate the seriousness of the offense. *Id.*, ¶ 3.

¶ 24. The sentencing guidelines for operating a vehicle while intoxicated,[9] which the sentencing court was reviewing, provide the necessary context for the holding in that case. The guidelines considered applied specifically to a fifth or subsequent offense. They contain columns and rows organized in two grids, one to use if the court found mitigating factors and one for aggravating factors. Both grids are organized to reflect the increasing levels of blood alcohol concentration. Each column of each grid contains both the amount of the fine, the additional surcharges, and the length of incarceration for that level of blood alcohol concentration. Once a trial court has determined whether the circumstances are aggravated or mitigating, the length of incarceration and the fine are determined on the grid. Accordingly, when the trial court in *Kuechler* explained its reasons for determining that the circumstances were aggravated, and indicated it was using the guidelines, for the supreme court to have further required that it also provide separate explanations of its reasons for imposing a fine and for incarceration would have only compelled the trial court to perform an essentially meaningless exercise as the guidelines had already established the linkage between the two forms of punishment.

¶ 25. *Kuechler* was remanded to the trial court because the defendant's ability to pay the fine imposed

[9] These guidelines were attached as a supplemental appendix to the appellant's reply brief which advises they were attached to Kuechler's brief-in-chief, appendix page 124, and are available on-line at http://libcd.law.wisc.edu/~wb/will0097/48774d03.pdf. *See* Wis. Stat. § 902.01(2)(b) & (3) (we may take judicial notice of public records).

had not been determined, although he raised the issue in his postconviction motion, *id.*, ¶ 13, and the court characterized as "unsatisfactory" the evidence in the record of inability to pay, *id.*, ¶ 14. On remand, the trial court was reminded of the supreme court's instructions in *Pedersen* and *Iglesias*, which instructions relied upon the American Bar Association *Standards on Sentencing Alternatives and Procedures:*

> (c) In determining whether to impose a fine and its amount, the court should consider:
>
> (i) the financial resources of the defendant and the burden that payment of a fine will impose, with due regard to his other obligations;
>
> (ii) the ability of the defendant to pay a fine on an installment basis or on other conditions to be fixed by the court;
>
> (iii) the extent to which payment of a fine will interfere with the ability of the defendant to make any ordered restitution or reparation to the victim of the crime; and
>
> (iv) whether there are particular reasons which make a fine appropriate as a deterrent to the offense involved or appropriate as a corrective measure for the defendant.

*Kuechler*, 268 Wis. 2d 192, ¶ 15 (citation omitted).

¶ 26. Here, there was no finding at the time of sentencing that Ramel had any ability to pay a fine, regardless of the amount. We therefore search the record to determine whether it supports such a finding. *See McCleary*, 49 Wis. 2d at 282 (we must search the record for facts to support the trial court's imposition of sentence as a proper discretionary act).

¶ 27. We know from the record that Ramel was thirty-five years old, lived with his mother, never completed high school, used alcohol excessively, had a long record of both juvenile and adult convictions (many of which involved violence and mistreatment of women), and had been unsuccessful on extended supervision. The record discloses nothing about Ramel's financial circumstances except that his "employment is kind of hard to verify and a little sketchy, but [he has] had some employment." There is no evidence he had any assets. Neither Ramel's attorney nor the State mentioned Ramel's financial circumstances in the entire record of the arguments at the sentencing hearing. The postconviction court noted Ramel's "indigency status." For all the foregoing reasons, we conclude that the record does not support a finding that at the time of sentencing Ramel had the ability to pay a fine. Therefore, we vacate the fine and remand with directions that the judgment be corrected accordingly.

*By the Court.*—Judgment and order affirmed in part; reversed in part; and cause remanded with directions.