COURT OF APPEALS
DECISION
DATED AND FILED

November 13, 2019

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2019AP173-CR**

Cir. Ct. No. **2015CF1213**

**STATE OF WISCONSIN**

**IN COURT OF APPEALS
DISTRICT III**

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

SHAWN A. ANDERSON,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Eau Claire County: JON M. THEISEN, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Seidl, JJ.

¶1      STARK, P.J.   Shawn Anderson appeals a judgment convicting him of second-degree sexual assault of a child and an order denying, in part, his motion for postconviction relief.   Anderson's sole argument on appeal is that the circuit court erroneously exercised its discretion by ordering him placed on lifetime

supervision as a serious sex offender, pursuant to WIS. STAT. § 939.615 (2017-18).[1] As relevant here, § 939.615(2)(a) provides that a court may place an offender on lifetime supervision if it determines lifetime supervision "is necessary to protect the public." Anderson argues the circuit court failed to expressly make this determination on the record during the sentencing hearing and failed to explain why placing him on lifetime supervision was necessary to protect the public. He further asserts that a court's explanation for its decision to place an offender on lifetime supervision must be separate and distinct from the court's remarks explaining the length of the offender's sentence.

¶2      We agree with Anderson that, ideally, the circuit court in this case would have provided a separate explanation for its decision to place Anderson on lifetime supervision, distinct from the court's remarks regarding the length of his sentence. On the record before us, however, we cannot conclude that the court erroneously exercised its discretion by failing to do so. The court's sentencing remarks, when considered in their totality, show that the court properly exercised its discretion by ordering Anderson placed on lifetime supervision based on the court's findings regarding the need to protect the public. Moreover, the court's postconviction decision adequately explained the link between the court's sentencing remarks and its decision to place Anderson on lifetime supervision. We therefore affirm.

---

[1] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

## BACKGROUND

¶3    In October 2014, Anderson was accused of sexually assaulting his five-year-old daughter in Indiana.  After a warrant was issued in Indiana for Anderson's arrest in connection with those allegations, he drove to the Eau Claire area, where he contacted a fifteen-year-old girl with whom he had struck up a friendship online in May 2013.  Anderson took the victim to motel rooms in Eau Claire on two separate occasions during October and November 2014, and they engaged in vaginal, oral, and anal sex.  Anderson recorded videos of the sexual activity.  Police arrested Anderson after discovering him in a Clark County motel room with the victim in January 2015.[2]

¶4    Based on Anderson's conduct with the victim in Eau Claire County, the State charged him with two counts of second-degree sexual assault of a child, contrary to WIS. STAT. § 948.02(2), and two counts of child enticement—sexual contact, contrary to WIS. STAT. § 948.07(1).  Both the criminal complaint and the Information informed Anderson that the State was seeking an order placing him on lifetime supervision as a serious sex offender, pursuant to WIS. STAT. § 939.615. Anderson ultimately pled no contest to one count of second-degree sexual assault of a child, and the remaining charges were dismissed and read in.

¶5    At sentencing, the State recommended a sentence of twelve years' initial confinement followed by fifteen years' extended supervision.  The State

---

[2] Anderson entered guilty pleas to one count of exposing a child to harmful material and one count of child enticement—recording in Clark County Circuit Court case No. 2015CF7, and additional charges of using a computer to facilitate a child sex crime and possession of child pornography were dismissed and read in.  It is undisputed that Anderson's Clark County charges pertained to the same victim and the same time period as the charges at issue in this case.

also asked the circuit court to order lifetime supervision. The State contended that protection of the public should be the court's "number one priority" when sentencing Anderson. Moreover, the State specifically argued that lifetime supervision was necessary to "not only give [the victim] and her family peace of mind, but to protect the entire public, not just Eau Claire County, but the public in general."

¶6 The defense, in turn, recommended a sentence consisting of four years' initial confinement and whatever term of extended supervision the circuit court deemed appropriate. As to lifetime supervision, defense counsel stated, "I don't know that the lifetime supervision is needed or necessary because, frankly, when [Anderson] leaves here, he's going to Indiana."

¶7 The circuit court ultimately followed the State's recommendation and sentenced Anderson to twelve years' initial confinement and fifteen years' extended supervision. The court provided a lengthy explanation for Anderson's sentence, during which it focused primarily on the seriousness of the offense, Anderson's character, and the need to protect the public. After pronouncing sentence, the court stated, without further elaboration, "Order lifetime supervision."

¶8 Anderson subsequently moved for postconviction relief, asking the circuit court to "vacate the lifetime supervision requirement on grounds that [the] Court failed to explain why it was necessary."[3] The court issued a written

---

[3] Anderson's postconviction motion also raised several other grounds for relief, including plea withdrawal. To the extent the circuit court denied those additional claims, Anderson has indicated that he is not pursuing them on appeal, and we therefore need not address them.

decision and order denying Anderson's request to vacate the lifetime supervision requirement. The court reasoned that although it had not drawn a "direct line" during its sentencing remarks "between the facts and 'lifetime supervision,'" it had "clearly stated reasoning and facts making a record to support its conclusion that lifetime supervision should be ordered." Anderson now appeals.

## DISCUSSION

¶9      The parties agree that, as with other sentencing decisions, whether to order that an offender be placed on lifetime supervision under WIS. STAT. § 939.615 is within the circuit court's discretion. *See **State v. Gallion***, 2004 WI 42, ¶17, 270 Wis. 2d 535, 678 N.W.2d 197. Our review is therefore limited to whether the court erroneously exercised its discretion. *Id.* The term "discretion" contemplates a process of reasoning that depends on facts of record and yields a conclusion based on logic and founded on proper legal standards. ***State v. Delgado***, 223 Wis. 2d 270, 280, 588 N.W.2d 1 (1999). We afford sentencing decisions a "strong presumption of reasonability" because the circuit court "is best suited to consider the relevant factors and demeanor of the convicted defendant." *Gallion*, 270 Wis. 2d 535, ¶18 (citation omitted).

¶10     WISCONSIN STAT. § 939.615(2)(a) provides that if a person is convicted of a "serious sex offense," the circuit court "may, in addition to sentencing the person … place the person on lifetime supervision by the [Department of Corrections] if notice concerning lifetime supervision was given to the person under [WIS. STAT. §] 973.125 and if the court determines that lifetime supervision of the person is necessary to protect the public." In this case, it is

5

undisputed that Anderson was convicted of a serious sex offense, as that term is defined in § 939.615(1)(b).[4] It is further undisputed that Anderson received notice under § 973.125 that the State was seeking an order placing him on lifetime supervision.[5] The only disputed issue on appeal is whether the court erroneously exercised its discretion by failing to adequately explain in its sentencing remarks that placing Anderson on lifetime supervision was necessary to protect the public.

¶11 We conclude the circuit court's sentencing remarks, when considered in their entirety, show that the court properly exercised its discretion by placing Anderson on lifetime supervision. During its explanation of the length of Anderson's sentence, the court emphasized three interconnected factors: the severity of the crime; Anderson's character; and the need to protect the public.

¶12 The circuit court began its sentencing remarks by emphasizing the seriousness of Anderson's offenses against the victim, referring to them as "heinous crimes" and noting that the victim was only fifteen years old when they occurred. Turning to Anderson's character, the court gave Anderson credit for his intelligence, his lack of anger, and his cooperation with the investigation. However, the court then noted that Anderson was "smart enough" to understand

---

[4] The term "serious sex offense" includes "[a] violation … of [WIS. STAT. §] … 948.02(1) or (2)." WIS. STAT. § 939.615(1)(b)1. Anderson was convicted of second-degree sexual assault of a child, contrary to § 948.02(2).

[5] WISCONSIN STAT. § 973.125 provides that when a prosecutor decides to seek lifetime supervision of a person charged with a serious sex offense specified in WIS. STAT. § 939.615(1)(b)1., the prosecutor "shall, at any time before or at arraignment and before acceptance of any plea, state in the complaint, indictment or information or amendments to the complaint, indictment or information that the prosecution will seek to have the person placed on lifetime supervision under s. 939.615." In this case, both the complaint and the Information notified Anderson that the State was seeking an order placing him on lifetime supervision.

that, while "nonforcible," his conduct with the victim was nevertheless "heinous" under the law.

¶13 The circuit court further found that Anderson had exhibited "manipulative or deceitful" character traits. It noted that Anderson's statements in court and to the author of the presentence investigation report seemed like "justifications, not out-and-out admissions." The court also stated that it did not "buy" Anderson's claim that his initial in-person contact with the victim—with whom he had previously communicated online—occurred only after his car coincidentally broke down relatively near to her residence while he was fleeing from Indiana to Canada after having been accused of sexually assaulting his five-year-old daughter.

¶14 The circuit court next observed that, regardless of whether Anderson could be said to have "groomed" the victim over the course of their online correspondence, he—as a "30-plus-year-old adult"—should have known better than to strike up and continue a relationship with a fifteen-year-old girl. The court stated, "[E]ven if she becomes friendly, emotional, whatever, you need to stop. … [Y]ou need to have the character to stop that, to avoid the situation." The court then observed that the assaults occurred on three occasions between October 2014 and January 2015, which indicated that they were the result of planning and premeditation by Anderson, rather than a coincidental breakdown of his vehicle. The court explained, "The repetitive instances and your way of thinking lead me to … heighten my need to protect the public."

¶15 The circuit court next opined that Anderson was "a pedophile"—that is, that he had a "sexual attraction to people inappropriately and/or morally younger than [him]." The court reasoned that without that inappropriate sexual

attraction, Anderson "would have intelligently removed [himself] from the situation" with the victim. The court further found that Anderson's use of the internet to communicate and develop a rapport with the victim, who was previously unknown to him, indicated a heightened need to protect the public. It explained:

> You made your connection [to the victim] across state lines. … This is not a cousin. This is not somebody you met at camp somewhere. This is someone whom you through the course of the internet, a very common tool, you snuck into a 15-year-old's house. And I'll—I use the word snuck. It's the thing that people fear, that a 15-year-old girl would start a relationship with a 30-year-old man, but it's behind closed doors. A 30-year-old man knows that he does not start or continue a—any sort of communications. I would be—I think the average person would be aware that this is something that, if discovered, it doesn't look good. And there's no need for it. It's an inappropriate relationship for what it's worth.

¶16   The circuit court next observed that, although Anderson had denied sexually assaulting his five-year-old daughter, he had admitted fleeing from Indiana as a result of those allegations, which did "not show strong character." The court referenced the daughter's graphic descriptions of the alleged assaults and noted that even if Anderson was innocent of that conduct, by fleeing he had abandoned his daughter in the midst of a traumatic situation. The court reasoned:

> If she had that type of vocabulary language, either somebody was feeding her [accusations] or she had been sexually assaulted by someone else or you [assaulted her]. … [T]hose are the only three possibilities that I can come up with. But certainly a person of good character would be there to face that traumatic issue with his or her daughter[,] I would contend.

¶17   The circuit court then opined that Anderson had significant rehabilitative needs, despite Anderson's own assessment that his needs were "low level." In support of that conclusion, the court explained:

> I believe your intelligence, your demeanor, your character actually make you sort of nefarious and extraordinarily dangerous as a pedophile. Your crossing state lines, your communicating through [the] internet, your hooking up with a stranger you know to be 15 or under 16 at the very least, my assessment, although wholly unscientific, is that you're one of the highest level predators maybe that I've ever seen, but certainly the one that parents, public and citizens of Wisconsin fear the most.

The court therefore stated that, "in the interest of protecting the public," Anderson's rehabilitative needs would be "best addressed in a confined setting or with heavy supervision."

¶18    Ultimately, the circuit court stated that for all of the reasons discussed above, it was "convinced that the state is correct" and would therefore follow the State's sentencing recommendation of twelve years' initial confinement and fifteen years' extended supervision. Immediately after announcing the length of Anderson's sentence, the court further stated, "Order lifetime supervision."

¶19    When read as a whole, the circuit court's sentencing remarks indicate that the court believed there was a serious need to protect the public from Anderson due to his manipulative and deceitful character, his attraction to young girls, his use of the internet to establish a relationship with the underage victim, and his willingness to travel across state lines in order to meet her in person. Based on those factors, the court expressly found that, "in the interest of protecting the public," Anderson's rehabilitative needs would be "best addressed in a confined setting or with heavy supervision." In all, the court's sentencing remarks provided ample support for a determination that lifetime supervision was necessary to protect the public from Anderson, as required by WIS. STAT. § 939.615(2)(a).

9

¶20 Moreover, the circuit court further clarified the basis for its decision to place Anderson on lifetime supervision in its written decision denying Anderson's postconviction motion to vacate the supervision requirement. *See State v. Fuerst*, 181 Wis. 2d 903, 915, 512 N.W.2d 243 (Ct. App. 1994) (observing that a postconviction hearing affords the circuit court the opportunity to clarify its sentencing decision). The court explained that during its sentencing remarks, it had "noted important facts supporting its conclusion that lifetime supervision is appropriate in the interest of protecting the public." For instance, the court noted that during its sentencing remarks, it had emphasized the seriousness of Anderson's crime, which Anderson had "attempted to mitigate" during his allocution. The court explained that it had "clarified to [Anderson] that while his crime may have been 'non-forcible,' … the crime was a serious crime (Class C felony punishable by up to 40 years in the State of Wisconsin)."

¶21 The circuit court also stressed its findings during the sentencing hearing that Anderson was "manipulative and deceitful" and had "attempt[ed] to manipulate the Court by justifying his criminal acts." The court further observed that it had "rejected the credibility of [Anderson's] version of what had happened"—i.e., that he met the victim in person only after his car coincidentally broke down in the Eau Claire area. The court explained it had "pointed out" during sentencing "that the preparation for the crime had not been the result of impulsive behavior, but rather had been protracted over a period of time." The court also stated it had observed at sentencing "that [Anderson's] concept of relationships between a 30[-]year[-]old and a child was not appropriate, and because he had exhibited such behavior repetitively, the Court felt strongly about protecting the public from him."

¶22     Finally, the circuit court emphasized that Anderson's rehabilitative needs and his efforts in crossing state lines to contact the victim presented a significant danger to the public that required supervision.  It explained:

> The Court pointed out [during its sentencing remarks] that the defendant's criminal behavior crossed County lines, State lines, and purportedly intended to cross out of the country.  Further, the Court noted that the defendant basically admitted leaving Indiana to go to Canada because of an accusation against him in Indiana.  The Court pointed out that the defendant's use of the Internet and travel to meet strangers made him extraordinarily dangerous.  The Court noted that the defendant's type of rehabilitative needs were best addressed in a confined setting or with "heavy supervision."

(Emphasis omitted.)   In conclusion, the court stated that while it "may not have given a direct line between the facts [discussed during its sentencing remarks] and 'lifetime supervision,'" it had "clearly stated reasoning and facts making a record to support its conclusion that lifetime supervision should be ordered."

¶23     The circuit court's postconviction decision clearly explained that the court had ordered Anderson placed on lifetime supervision because it believed doing so was necessary to protect the public, for the same reasons discussed in the court's remarks regarding the length of Anderson's sentence.  On the whole, the court's sentencing remarks and postconviction decision show that the court considered the relevant facts, applied the proper legal standard, and used a logical process to reach a reasonable conclusion.  *See **Delgado***, 223 Wis. 2d at 280.  We therefore agree with the State that the record shows the court did not erroneously exercise its discretion by placing Anderson on lifetime supervision.

¶24     Anderson nevertheless argues that the circuit court erroneously exercised its discretion because it did not expressly link the factors that it discussed when explaining the length of his sentence to its decision to place him

on lifetime supervision. He contends that in order to place an offender on lifetime supervision, a court "must conduct an exercise of discretion specific to lifetime supervision—an exercise beyond the standard consideration of sentencing factors applicable in every criminal case."

¶25 In support of this argument, Anderson notes that WIS. STAT. § 939.615(2)(a) grants circuit courts the authority to place a person on lifetime supervision "*in addition to* sentencing the person." (Emphasis added.) He argues this language shows that imposing sentence and imposing lifetime supervision are "two distinct duties" and therefore require separate explanations. We reject this argument, as it attempts to read language into § 939.615(2)(a) that does not exist in the statute's text. *See State v. Matasek*, 2014 WI 27, ¶20, 353 Wis. 2d 601, 846 N.W.2d 811. The statute merely grants courts discretion to order certain defendants placed on lifetime supervision, in addition to sentencing them, when specific criteria are satisfied. Nothing in the statute indicates that a court is required to provide an independent explanation for its decision regarding lifetime supervision separate from the court's explanation regarding the length of a defendant's sentence.

¶26 Anderson also relies on *Gallion*, in which our supreme court "reaffim[ed]" that a circuit court's sentencing rationale must be set forth "on the record" during the sentencing hearing. *Gallion*, 270 Wis. 2d 535, ¶38. Thus, during its sentencing remarks, a court must expressly identify the objectives of the defendant's sentence. *Id.*, ¶40. The court must then describe the facts relevant to those objectives and explain why "the particular component parts of the sentence imposed advance the specified objectives." *Id.*, ¶42. The court must also identify "the factors that were considered in arriving at the sentence and indicate how those factors fit the objectives and influence the decision." *Id.*, ¶43. By statute, one

factor a court must consider when imposing sentence is "the protection of the public." WIS. STAT. § 973.017(2)(ad); *see also Gallion*, 270 Wis. 2d 535, ¶40 n.10.

¶27 In essence, *Gallion* requires a sentencing court to provide an on-the-record explanation of the "linkage" between a sentence's component parts and the applicable sentencing objectives, "by reference to the relevant facts and factors." *Gallion*, 270 Wis. 2d 535, ¶46. Anderson argues that, before placing an offender on lifetime supervision under WIS. STAT. § 939.615, a court should be required to provide a similar, on-the-record explanation of the "linkage" between the relevant facts and the court's determination that lifetime supervision is necessary to protect the public. In support of this proposition, he cites several cases that he claims "extended the rationale of *Gallion* to other components of a court's exercise of discretion at sentencing beyond the sentence itself."

¶28 The cases Anderson relies upon do not support his position. He first cites *State v. Helmbrecht*, 2017 WI App 5, ¶¶8-9, 373 Wis. 2d 203, 891 N.W.2d 412 (2016), in which this court addressed the extent to which a sentencing court must explain its decision to grant or deny a defendant's request for expungement. We held that "in assessing whether to grant expungement, the sentencing court should set forth in the record the facts it considered and the rationale underlying its decision for deciding whether to grant or deny expungement." *Id.*, ¶12. We stated that such an on-the-record explanation was "contemplated both by the [expungement] statute and our supreme court's pronouncement in *Gallion*." *Helmbrecht*, 373 Wis. 2d 203, ¶12.

¶29 *Helmbrecht* is unhelpful to Anderson for two reasons. First, a circuit court must consider protection of the public both when sentencing a

defendant and when determining whether to impose lifetime supervision. *See* WIS. STAT. §§ 939.615(2)(a), 973.017(2)(ad). In contrast, when determining whether to order expungement, a court must consider two factors that are outside the normal sentencing analysis, specifically: (1) whether expungement will benefit the defendant; and (2) whether expungement will harm society. WIS. STAT. § 973.015(1m)(a)1. In that context, it makes sense that a court would be required to set forth a separate, on-the-record analysis of the factors relevant to its expungement determination. Conversely, it would make little sense to require a court to provide a separate discussion of the need to protect the public when explaining its decision as to lifetime supervision, given that the court is otherwise required to address that factor during its remarks concerning the length of the defendant's sentence.[6]

¶30 Second, although the record in *Helmbrecht* showed that the circuit court had failed to provide an adequate explanation during the sentencing hearing for its decision to deny expungement, we nevertheless affirmed based on the court's "thorough, well-reasoned" postconviction decision. *Helmbrecht*, 373 Wis. 2d 203, ¶¶4, 13-14. In that decision, the court explained that granting

---

[6] Two other cases Anderson cites—*State v. Ramel*, 2007 WI App 271, 306 Wis. 2d 654, 743 N.W.2d 502, and *State v. Cherry*, 2008 WI App 80, 312 Wis. 2d 203, 752 N.W.2d 393—are unhelpful for the same reason. In *Ramel*, we held that a circuit court is required to provide a separate, on-the-record explanation for its decision to impose a fine as a component of a defendant's sentence in addition to a term of incarceration. *Ramel*, 306 Wis. 2d 654, ¶14. In *Cherry*, we held that under a prior version of the DNA surcharge statute, a circuit court was required to provide an on-the-record explanation for its discretionary decision to impose a DNA surcharge. *Cherry*, 312 Wis. 2d 203, ¶9. In both *Ramel* and *Cherry*, the circuit courts' discretionary decisions required the consideration of factors outside the typical analysis performed when determining the length of a defendant's sentence. *See Ramel*, 306 Wis. 2d 654, ¶¶13-15; *Cherry*, 312 Wis. 2d 203, ¶10. As explained above, that is not the case here, where the circuit court was required to consider protection of the public both when determining the length of Anderson's sentence and when deciding whether to place him on lifetime supervision.

14

expungement would have harmed society by "undermin[ing] the primary sentencing purposes of deterrence and punishment." *Id.*, ¶14. In this case, the circuit court similarly explained in its postconviction decision that lifetime supervision of Anderson was necessary to protect the public for the same reasons the court had discussed during its remarks concerning the length of Anderson's sentence. Accordingly, *Helmbrecht* does not support Anderson's argument that the court erroneously exercised its discretion by failing to provide an adequate explanation for its decision to place him on lifetime supervision.

¶31    Anderson also relies on *State v. Jackson*, 2012 WI App 76, 343 Wis. 2d 602, 819 N.W.2d 288, in support of his claim that the circuit court was required to provide a separate, on-the-record explanation for its decision regarding lifetime supervision. However, *Jackson* is inapposite. In that case, the defendant argued the circuit court had erroneously exercised its discretion by ordering him to register as a sex offender because it incorrectly determined that his underlying convictions were sexually motivated. *Id.*, ¶1. We reversed the circuit court's decision, but not based on any failure of the court to explain its reasoning. *Id.*, ¶35. Rather, we simply determined the court's conclusion that the offenses were sexually motivated was incorrect as a matter of law. *Id.*

¶32    Ultimately, none of the legal authority that Anderson relies upon supports his assertion that the circuit court failed to adequately explain its decision to place him on lifetime supervision. As explained above, the court's sentencing remarks contained a detailed discussion of the factors supporting the court's conclusion that Anderson was dangerous to the public. Anderson does not argue that those factors were insufficient to support the court's decision to order lifetime supervision, nor does he suggest that any additional findings were required. He merely argues that, after pronouncing sentence, the court should have again listed

the same factors regarding protection of the public in order to support its decision regarding lifetime supervision. We hold that such a separate explanation is not required where, as here, the court's sentencing remarks adequately address the need to protect the public and therefore show that the court properly exercised its discretion by placing the defendant on lifetime supervision.

¶33 Moreover, the circuit court further explained in its postconviction decision why its sentencing remarks regarding the need to protect the public supported its decision to place Anderson on lifetime supervision. We agree with the State that the court's postconviction decision makes it "readily apparent how the court went from its reasoning that Anderson was extremely dangerous and that the need to protect the public from him was paramount to its decision to order lifetime supervision."

¶34 In closing, we observe that it would be the best practice for a circuit court to provide a separate explanation for its decision to place a defendant on lifetime supervision, distinct from the court's explanation regarding the length of the defendant's sentence. However, such a separate explanation is not required in a case—like this one—where the record as a whole shows that the court properly exercised its discretion by ordering lifetime supervision. While there may be some cases in which a court's sentencing remarks and postconviction decision are insufficient to support its decision regarding lifetime supervision, this case is not one of them. We therefore affirm Anderson's judgment of conviction and the order denying, in part, his motion for postconviction relief.

*By the Court.*—Judgment and order affirmed.

Not recommended for publication in the official reports.